**In re the Marriage of Dianna (Atkins) CLARK, Respondent-Appellant,**

v.

**Thomas P. ATKINS, Petitioner-Appellee.**

**No. 3–185 A 22.**

Court of Appeals of Indiana, Third District.

Feb. 18, 1986.

James E. Burke, South Bend, for respondent-appellant.

Joseph V. Simanski, Plymouth, for petitioner-appellee.

GARRARD, Judge.

Thomas Atkins (Atkins) and Dianna Clark (Clark) were divorced in 1974. Two children, Raeann and Renee, were born to the marriage, and pursuant to the divorce, Clark received custody.

In 1982 Clark desired to move to Oklahoma with the children to be with her new husband as he prepared for the ministry at Rhema Bible Training Center. The trial court entered an order authorizing Clark to retain custody of the children while living in Oklahoma, but requiring that Clark return them to this state upon her new husband's graduation. It does not appear that this order was appealed.

Clark's husband graduated from Rhema in 1984. However, in 1983 Clark had enrolled in a two year program at the same school, and thus did not wish to return to Indiana. When she informed Atkins that she would not be coming back and that the

children did not wish to return for visitation, litigation ensued.[1]

In June, Atkins traveled to Oklahoma armed with a trial court order "reaffirming" its 1982 decree, hoping that the children would return with him. They refused. On August 6, 1984, the trial court conducted hearings and issued a temporary custody decree. Shortly thereafter, Atkins went to Oklahoma with the decree. There was a hearing in Oklahoma, at which Clark either raised certain defenses or attempted to invoke that state's jurisdiction. On each trip Atkins incurred expenses.

In October of 1984 the trial court found Clark in contempt citing:

"a) her refusal to provide visitation as was ordered by the Court

b) her violation of the Court order reaffirming the Petitioner's visitation rights

c) her failure to be responsible for the transportation of the minor children for purposes of visitation

d) her failure to appear at hearing in violation of the notice to appear

e) her efforts to have another Court assume jurisdiction in an attempt to defeat the visitation rights of the Petitioner and to usurp the authority of this Court

f) her failure to return the children to the jurisdiction of this Court after the completion of the purpose stated in the Court's order of May 28, 1982"

It ordered her to pay certain sums to "purge" herself of that contempt. It also authorized her to retain custody of the children but required her to return the children to this state upon her graduation.

In ruling on the motion to correct errors, the trial court modified the existing custody order by granting Atkins and Clark joint legal custody of their children.

Other facts, as necessary, will appear in the body of this opinion.[2]

From the October 1984 order Clark appeals. In essence she presents five issues.

I. Did the circuit court have jurisdiction under the Uniform Child Custody Jurisdiction Act to modify its 1982 custody order?

II. Was the trial court's contempt determination contrary to the law?

III. Did the trial court err in calculating damages?

IV. Did the trial court err in restricting Clark's ability to travel under its custody order?

V. Did the trial court err in ordering joint custody of the children?

I.

Did the circuit court have jurisdiction under the Uniform Child Custody Jurisdiction Act to modify its 1982 custody order?

In her reply brief Clark argues that the trial court's order must be vacated since it did not expressly consider the jurisdictional requirements or inconvenient forum considerations controlled by the Uniform Child Custody Jurisdiction Act (hereafter UCCJA).

■ Since the jurisdictional aspects of the UCCJA have been held to encompass subject matter rather than personal jurisdiction, they can be raised for the first time on appeal.

■ Furthermore, while not required by the terms of the UCCJA, case law in Indi-

---

1. At several points in her brief, Clark states that Atkins agreed to allow her to remain in Oklahoma with the children. While some of his testimony supports this contention, in rebuttal he expressly repudiated his earlier testimony. It is the trial court's duty, not ours, to judge the credibility of the witnesses and decide if there was an agreement. To the extent that it might be material, we must conclude that the trial court decided that there was no agreement.

2. The attention of counsel is directed to the Indiana Rules of Procedure, Appellate Rule 7.2(A)(3)(a). "Notations shall be made on the margin of each page of the transcript indicating ... the name of each witness, and whether the examination is direct, cross, or redirect." While failing to follow this rule will not usually result in the dismissal of an appeal, such notations do simplify this court's job in reviewing the evidence.

ana has determined that it is error, but not reversible error, for a court not to make an express finding concerning jurisdiction. *In re Marriage of Hudson* (1982), Ind.App., 434 N.E.2d 107, *cert. denied* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433. In the case before us now, there was no record entry with respect to the trial court's jurisdiction. This was error. However, if the trial court did in fact have jurisdiction, no reversible error was committed.

■ According to Professor Bodenheimer, Reporter for the Special Committee which prepared the UCCJA, the continuing jurisdiction of the court which first entered a child custody decree is an exclusive jurisdiction, which continues until the child and all the parties have left that state. Indiana has approved this view. *Funk v. Macaulay* (1983), Ind.App., 457 N.E.2d 223, 226–7, citing Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA* (1981), 14 Fam.L.Q. 214. It is uncontested that Atkins has continued to live in this state. Therefore, under Professor Bodenheimer's construction of the act, this state would have exclusive jurisdiction. Further, even under the strict wording of section 3 of the act,[3] this state would have jurisdiction. It appears that the children lived most of their lives in Indiana, and their father still lives here. In addition to these significant connections to this state, Indiana is also the location of the court records concerning the divorce and previous custody determinations, and has available to it via sections 19[4] and 20[5] substantial evidence concern-

---

**3.** "31-1–11.6–3 Jurisdiction

Sec. 3. Jurisdiction. (a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

"(3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a), physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody."

**4.** "31.1–11.6–19 Hearings and studies in another state; orders to appear

Sec. 19. Hearings and Studies in Another State; Orders to Appear.

(a) A court of this state may request the appropriate court of another state to hold a hearing to adduce evidence, to order a party to produce or give evidence under other procedures of that state, or to have social studies (an investigation and report pursuant to IC 31–1–11.5–22) made with respect to the custody of a child involved in proceedings pending in the court of this state; and to forward to the court of this state certified copies of the transcript of the record of the hearing, the evidence otherwise adduced, or any social studies prepared in compliance with the request. The cost of the services may be assessed against the parties, or, if necessary, ordered paid by the county.

(b) A court of this state may request the appropriate court of another state to order a party to custody proceedings pending in the court of this state to appear in the proceedings, and if that party has physical custody of the child, to appear with the child. The request may state that travel and other necessary expenses of the party and of the child whose appearance is desired will be assessed against another party or will otherwise be paid."

**5.** "31-1–11.6–20 Assistance to courts of other states

Sec. 20. Assistance to Courts of Other States. (a) Upon request of the court of another state,

ing the children. Thus, the trial court plainly had jurisdiction.

▮ The court's failure to make an express determination under the inconvenient forum provisions contained in section 7 [6] of the UCCJA was not raised to the trial court. If jurisdictional it can be raised for the first time on appeal. If not, it has been waived. Under the terms of section 7, inconvenient forum questions *only* arise when a court *has* jurisdiction. If it has jurisdiction, but determines that a different forum is in a better position to entertain the litigation, it "... may decline to exercise its jurisdiction at any time before making its decree." Section 7(a). The wording of the act makes plain both that this is a

the courts of this state which are competent to hear custody matters may order a person in this state to appear at a hearing to adduce evidence or to produce or give evidence under other procedures available in this state or may order social studies to be made for use in a custody proceeding in another state. A certified copy of the transcript of the record of the hearing or the evidence otherwise adduced and any social studies prepared shall be forwarded by the clerk of the court to the requesting court.

"(b) A person within this state may voluntarily give his testimony or statement in this state for use in a custody proceeding outside this state.

(c) Upon request of the court of another state a competent court of this state may order a person in this state to appear alone or with the child in a custody proceeding in another state. The court may condition compliance with the request upon assurance by the other state that travel and other necessary expenses will be advanced or reimbursed."

6. "31.1–11.6–7  Inconvenient forum

Sec. 7.  Inconvenient Forum. (a) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

(b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and his family or with the child and one (1) or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 1 of this chapter.

"(d) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

(e) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

(f) The court may decline to exercise its jurisdiction under this chapter if a custody determination is incidental to an action for dissolution of marriage or another proceeding while retaining jurisdiction over the dissolution of marriage or other proceeding.

(g) If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.

(h) Upon dismissal or stay of proceedings under this section the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court.

(i) Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction the court of this state shall inform the original court of this fact."

discretionary determination, since the court "may" but is not required to decline jurisdiction, and that being an inconvenient forum does not deprive the court of jurisdiction, since the result is a refusal to exercise jurisdiction. Since being an inconvenient forum does not deprive a trial court of jurisdiction, the matter cannot be raised for the first time on appeal.

## II.

Was the trial court's contempt determination contrary to the law?

In various sections of her brief, Clark attacks the trial court's conclusion that she was in contempt for failing to obey its orders. The circuit court listed six reasons that it considered Clark to be in contempt. While she attacks each ground individually, it is obvious that we must construe the order as a whole. Since the trial court based its decision on alternate grounds, we will reverse only if Clark succeeds in showing that no legal or factual basis exists to support the contempt determination.

## A.

Did the trial court err in finding Clark in contempt for her failure to obey a child custody order which allegedly violated her constitutional right to travel?

On October 3, 1984 the trial court found Clark in contempt for:

"f) her failure to return the children to the jurisdiction of this Court after the completion of the purpose stated in the Court's order of May 28, 1982"

Clark argues that this was incorrect in that it was based on an unconstitutional child custody order. Since she is attempting to mount a collateral attack on that custody order, we need not reach the merits of the claim. *But see* part IV, *infra.*

At all times relevant to this litigation, the law in this state has provided that when a dissolution decree is entered, it becomes an appealable final order. IC 31–1–11.5–9. Under IC 31–1–11.5–22 it is also possible to modify an existing child custody order. While the Marriage Dissolution Act does not state it expressly, Indiana courts deal with such modifications as final orders. *Haag v. Haag* (1959), 240 Ind. 291, 163 N.E.2d 243.

Thus, both the divorce decree entered in 1974 and the 1982 modification order were final judgments from which no appeal was taken.

Notwithstanding the fact that she chose not to pursue her right to appeal, Clark now asserts that the trial court cannot punish her for her failure to obey its order, since that order allegedly infringes on her contitutional right to travel.

As a general rule, a judgment is subject only to direct, and not to collateral, attack.

A direct attack is a "... proceeding provided for by law for the purpose of avoiding or correcting a judgment ... while an attempt to do the same thing in any other proceeding is a collateral attack...." *Benbow v. Studebaker* (1912), 51 Ind.App. 450, 99 N.E. 1033, citing Van Fleet, *Collateral Attack* Section 3.

While collateral attack is allowed if the trial court lacked subject matter or personal jurisdiction, *Hamilton v. Ahlemeyer* (1967), 250 Ind. 403, 231 N.E.2d 278, 280, it plainly had jurisdiction in 1982, since Indiana was where the parties lived.

Contempt proceedings are not actions designed to correct errors previously made by trial courts. They are intended to vindicate the courts' dignity and to enforce litigants' rights pursuant to court orders. Thus, we cannot inquire into the correctness of the 1982 custody order, as this would be a collateral attack. This is so, even though the questions raised concerning the order are constitutional in nature. *Walker v. City of Birmingham* (1967), 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210.

The trial court committed no error in using Clark's obvious disregard of its 1982 custody order as a basis for a finding of contempt.

## B.

Did the trial court err by finding Clark in contempt for the non-actions of her minor children?

The trial court stated that Clark was in contempt of court because of:

"a) her refusal to provide visitation as was ordered by the Court

b) her violation of the Court order reaffirming the Petitioner's visitation rights

c) her failure to be responsible for the transportation of the minor children for purposes of visitation"

Clark claims that these findings are wrong. She does not take issue with the court's finding that she was responsible for transporting the children; she argues that she did not deny Atkins his visitation. Instead, she contends that her daughters said that they did not wish to visit their father, and that she cannot be held responsible for the acts of third parties.

Clark was under an obligation to return the children to Indiana for visitation. She did not attempt to do so. The children were minors over whom she had legal custody and authority. Thus, she is in no position to argue that her children's desires not to return justified her noncompliance.

### C.

Did the trial court err in finding Clark in contempt for having attempted to have an Oklahoma court assume jurisdiction of the case?

Another ground relied on by the trial court for finding Clark in contempt was:

"e) her efforts to have another Court assume jurisdiction in an attempt to defeat the visitation rights of the Petitioner and to usurp the authority of this Court"

In rather chaotic fashion, Clark's brief argues that this ground for contempt was improper. Her arguments starts by phrasing the issue as one of questioning jurisdiction rather than seeking to usurp it, then alleges that the Indiana court had no jurisdiction to issue its August temporary custody order; that finding her in contempt for challenging its jurisdiction violates her due process rights; that it was Clark's Oklahoma counsel who raised the matter;

that the temporary custody order was unconstitutional, and thus subject to collateral attack; and finally that the trial court seems "... paranoid in its fear of being questioned or reviewed." Instead of engaging in a long, unuseful discussion, we point out that the court's decision is supported by other grounds and thus no reversible error is presented.

### D.

Did the trial court err by finding Clark in contempt for her failure to appear at a hearing or for her failure to obey an order which merely reaffirmed its 1982 order?

The trial court found Clark in contempt for:

"(b) her violation of the Court order reaffirming the Petitioner's visitation rights

\* \* \* \* \* \*

(d) her failure to appear at [a] hearing in violation of a notice to appear"

Clark contends that one cannot be held in contempt either for failing to obey an "order" which merely reaffirms a previous order, or for failing to respond to a notice. However, due to the posture of the case before us, we do not reach the merits of these issues.

In her motion to correct errors, Clark argued that she did not receive notice of the hearing in question. This assertion is not sufficient to present the issue she now argues, viz. that failing to appear is not sufficient to support a contempt citation. Thus, this issue was not properly presented to this court. Since on appeal Clark has conceded that she had notice of the hearing, the issue presented in the motion to correct errors has also been waived.

Similarly, in her appellate brief Clark argues that finding her in contempt for violating an order issued without notice violates her due process rights. This issue nowhere appears in her motion to correct errors and thus was not preserved for appeal.

### III.

Did the trial court commit reversible error in determining the amount of damages it awarded Atkins?

On appeal, Clark urges that the trial court committed several errors in ordering her to pay a total of $1500.00 of the expenses Atkins incurred as a result of her contempt and in ordering her to be responsible for his appellate attorney's fees.

### A.

Was the trial court's award of $1500.00 punitive rather than compensatory?

In its decree, the court ordered:

"13. That to perge [sic] herself of contempt, the Respondent shall be responsible for and pay to the Petitioner within thirty (30) days of this date, the legal fees and unnecessary expenses incurred by the Petitioner in his attempts to exercise his visitation rights, which unnecessarily incurred expenses total the sum of one thousand five hundred dollars ($1,500.00)."

She contends that the order shows that the court's award was for punitive and not compensatory purposes, or else it would stand without reference to purging the contempt.

■ We agree that punishment is not the primary purpose of a civil contempt. However, civil contempts may seek to coerce behavior or to compensate a party when a court order is violated. *Thrasher v. Van Buren Tp.* (1979), 182 Ind.App. 121, 394 N.E.2d 215, 220. If the order is coercive, it is axiomatic that there must be an opportunity to purge one's self of the contempt. *Herd v. State* (1977), 37 Md.App. 362, 377 A.2d 574. Since the award in question was limited to unnecessary expenses occasioned by her conduct, Clark has failed to establish that the court acted impermissibly.

### B.

Did the trial court fail to properly consider the resources of the parties in fashioning its order?

Clark argues that the trial court was required to consider the parties' disparate earning power, *Wendorf v. Wendorf* (1977), 174 Ind.App. 172, 366 N.E.2d 703, and resources available to them, *Ross v. Ross* (1979), Ind.App., 397 N.E.2d 1066, in drafting its contempt order. She argues that in order to make the award it did, the court must have either abused its discretion or ignored the differences in the parties' material wealth.

■ We disagree with Clark's central contention. The court may consider the relative material positions of the parties in fashioning its remedy for a civil contempt, but it is not bound to attach any particular consequence to the injured party's material circumstances. We will presume that the court considered all of the relevant evidence. *Pavach v. State* (1971), 149 Ind. App. 293, 271 N.E.2d 896. Given that the court was attempting to fashion a coercive remedy and that Clark's contempt was responsible for the expenses created, *Haycraft v. Haycraft* (1978), 176 Ind.App. 211, 375 N.E.2d 252, 256, we cannot conclude that the trial court abused its discretion.

### C.

Were the additional expenses unreasonable or unnecessary?

After he was informed that his former wife would not be coming back to Indiana and that the children would not be returning for visitation, Atkins went to Oklahoma hoping to bring the children back to Indiana with him.

Clark urges that the expenses incurred on this trip were unnecessary since Atkins had been told by the girls that they did not want to return to this state. Since they were unnecessary, she concludes that the trial court abused its discretion in ordering her to pay them.

This court cannot reweigh the evidence, but must instead take all the favorable testimony and the reasonable inferences to

be drawn from it, in the light most favorable to the judgment before us.

■ There was testimony that the children behaved differently when they were in Atkins' presence than when they were in their mother's presence. From this the court could have concluded that Atkins reasonably expected them to act differently when he spoke to them in person than when he spoke to them over the telephone. Clark has failed to show that such a conclusion would be unreasonable and has failed to prove an abuse of discretion.

She argues that during his first visit Atkins had an opportunity to force the children to go with him. Thus, she claims that the expenses of the second trip were unnecessary.

■ Since Atkins did not have legal custody of the children, we know of no authority which would have condoned the use of such self help measures. This court certainly cannot conclude that a person acts unreasonably when he declines to take action which may constitute a felony.[7] We are disturbed that counsel would suggest such conduct. Atkins should be commended rather than criticized for having submitted a problem capable of generating such emotional impact to a peaceful resolution in the legal system. Again, no error has been shown.

### D.

Did the trial court err in awarding Atkins' attorney's fees on appeal?

After it ruled on her motion to correct errors, and without holding a hearing, but before this court gained jurisdiction under Appellate Rule 3, the trial court ordered Clark to be responsible for Atkins' reasonable attorney's fees incurred with respect to her appeal, not to exceed $3,000.00.

Clark raises various arguments in opposition to the trial court's order; however, since the order in question is not a final judgment, we are unable to address the various errors alleged with respect to the order.

A final judgment is one which finally determines the rights of the parties or ends some distinct and definite branch of the litigation. *In re Heineman's Estate* (1951), 122 Ind.App. 343, 101 N.E.2d 194.

■ While the contempt citation and custody determination have terminated distinct and definite portions of the litigation, the award of appellate attorney's fees has not, since it did quantify the fees to be awarded. Since it is not a final judgment, there is nothing to appeal. *See* Appellate Rule 4.

### IV.

Was the trial court's order granting legal and physical custody of the minor children to Clark but limiting her right to travel and remain outside Indiana an unconstitutional infringement of a fundamental right?

In its October 1984 decree, the trial court said that:

"... under the circumstances, the Court now finds that it is in the best interests of the minor children that their care and custody be returned to the Respondent upon the condition that on the Respondent's completion of attendance at Rheme Bible College, either by graduation or termination of enrollment, the children must be returned immediately to the jurisdiction of this Court where they are to remain until such time as the children attain the age of majority or until further order of the Court."

■ In order to withstand a constitutional attack, a restriction on the right to travel must be necessary to a compelling governmental objective. *Shapiro v. Thompson* (1969), 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600.

■ Clark argues that in this case, her right to travel is to be judged against her former husband's visitation rights. She alleges that since his rights can be adequately protected without restricting her right to

7. *See, e.g.,* IC 35–42–3–3.

travel, the custody decree's residence restrictions are unconstitutional.

The straightforward answer to Clark's argument is that the court's order does not impose any necessary burden whatever upon *her* right to travel. She remains free to go wherever she may choose. It is the children who must be returned to Indiana. *See, e.g., Ziegler v. Ziegler* (Idaho App. 1984), 107 Idaho 527, 691 P.2d 773; *Carlson v. Carlson* (1983), 8 Kan.App.2d 564, 661 P.2d 833.

The law has few objectives more compelling than protecting the interests of children. Where families have suffered the trauma of divorce those interests include not only the care and custody of the child but its right and obligation to know and visit with a non-custodial parent. In addition, the court was confronted with evidence of a course of conduct whereby Clark attempted to circumvent those rights and obligations when she was beyond the territorial jurisdiction of the court.

We find no error in the court's determination.

### V.

Did the trial court err in modifying its child custody decree to grant joint custody to the parties?

In ruling on the motion to correct errors, the trial court modified the existing child custody order so as to grant Clark and Atkins joint legal custody of their children, rather than leaving sole legal and physical custody in Clark. Clark argues that this was done without a showing that there had been a substantial change in circumstances, was an abuse of discretion since it was intended to punish her, and was done solely for Atkins' benefit.

The law does not require that a trial court make special findings to support its custody decisions, *In re Marriage of Ford* (1984), Ind.App., 470 N.E.2d 357, 363, and it does not appear that the parties in this case requested them. Clark concedes that it is in a child's best interest to have a relationship with both its parents, Record

at 163-4, 166. The general tenor of the testimony indicated that Atkins' relationship with his children had deteriorated since they moved to Oklahoma. Inferentially the cause of this deterioration was at least partially attributable to Clark's influence.

Moreover, Clark's conduct toward Atkins' rights as a father and toward the authority and dignity of the court's orders evince a substantial change in circumstances affecting the welfare of the children.

We find no error in the court's decision which did not remove custody from Clark but afforded recognition to Atkins' rights and the best interests of the children.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.