**Julie Ann (Pittman) WILSON, Appellant (Petitioner Below),**

v.

**Mark Daryl PITTMAN, Appellee (Respondent Below).**

No. 82A01–8908–CV–292.

Court of Appeals of Indiana, First District.

June 18, 1990.

500

Mark A. Foster, Evansville, for appellant.

Robert E. Zoss, Sr., Zoss, D'Amour, Krohn and Collins, P.C., Evansville, for appellee.

ROBERTSON, Judge.

Julie Ann Wilson appeals a judgment of the Vanderburgh Superior Court finding her in contempt of court and granting Mark Daryl Pittman's motions for modification of visitation and child support and for attorney fees.

We affirm.

Wilson and Pittman received a dissolution of marriage on October 5, 1988. At that time, their two children, Christina and David Nathaniel, were twenty months and three months old respectively. Pittman filed his first information for indirect contempt on November 18, 1988 along with a petition for modification of visitation. A hearing held on those matters in February, 1989, did not present sufficient opportunity for both parties to complete their evidence. While awaiting the second hearing, Pitt-man filed his second information for contempt and asked for a reduction in child support. The trial court issued its ruling on April 6, 1989. Wilson argues first that the order of visitation is too vague to be enforceable by contempt.

IND. CODE 31-1-11.5-17(c)(1) gives the court the power to enforce its visitation orders by contempt. Whether to punish for contempt is generally a matter within the trial court's discretion. *Clark v. Clark* (1980), Ind.App., 404 N.E.2d 23, 37. Review of matters within the discretion of the trial court will result in reversal only where there is no rational basis for the trial court's action, i.e. where the court's action is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences that can be drawn therefrom. *Eyler v. Eyler* (1986), Ind., 492 N.E.2d 1071, 1075; *Clark*, 404 N.E.2d at 37. This court will neither reweigh the evidence nor assess the credibility of witnesses. We will not substitute our judgment for that of the trial court, even though the evidence might support a different conclusion. *Eyler*, 492 N.E.2d at 1075.

In order for a person to be punished for being in contempt of a court's order, there must be an order or decree commanding the accused to do or refrain from doing something. *Clark*, 404 N.E.2d at 37. While the ordinary means of enforcing visitation privileges is by means of a contempt proceeding, if the provisions of the divorce decree concerning visitation are indefinite, they may not be the basis of a contempt proceeding. *Id.* The portion of the decree relating to visitation rights must spell out the times, places, and circumstances of visitation. *Id.* This decree does. The provision at issue here reads:

The husband testified that his current days off are Fridays and Sundays. The Court will then order that the husband is to have visitation with both children on one (1) of his days off that is mutually agreeable to the parties. The husband may have overnight visitation with the minor daughter of the parties on the

evening before or the evening of his day off. He is to return her home at a reasonable hour. If the husband has overnight visitation on Saturday evening, then he should have the daughter home by no later than 6:00 p.m. on Sunday, but the Court will permit the parties to work out that arrangement which they feel is in the best interest of the children. The husband should return the minor son to the wife's residence at an early enough hour on the day of visitation so as not to disrupt normal bedtime habits and patterns. The Court further orders that if the husband's schedule permits, the children should be available to him for one (1) evening meal per week, although this should be on a day agreed upon by the parties and maintained thereafter as long as reasonable. The husband shall have the children home no later than 7:00 p.m. The Court further orders that the husband may have visitation with the children at all other reasonable times as agreeable to the parties.

As *Wilson* indicated at the first hearing on Pittman's petitions (R. 0163), the provision is fairly clear: Pittman is to be permitted visitation with both of his children on one of his days off. In addition, he is to have overnight visitation with daughter Christina on either the evening before or the evening of his day off.

■ Wilson claims she interpreted the decree in a reasonable manner, consistent with the decree's language. However, Wilson does not tell us to which interpretation she is referring. The record shows Wilson adopted various interpretations depending on her will. (R. 0290, 0291, 0293) Prior to the first hearing in February, 1989, she required Pittman to pick up the son first, bring him back, and then take the daughter overnight and visit with her the next day. After the first hearing, she told Pittman to take both children, but informed him that he could not have Christina overnight. (R. 0227)

Wilson also argues that there is insufficient evidence her conduct was willful.[1] Wilson misconceives her burden of proof on appeal. At the hearing on the contempt petition, Wilson had the burden of establishing that her failure to obey the order was not willful. *Patrick v. Patrick* (1988), Ind.App., 517 N.E.2d 1234, 1237. The court's finding against her is in effect a negative judgment which we will reverse only if Wilson now establishes that there is no evidence to support the court's conclusion. *Holman v. Holman* (1985), Ind.App., 472 N.E.2d 1279, 1284.

The record shows Wilson engaged in a pattern of behavior designed to frustrate Pittman's attempts to exercise visitation as set out in the court's order. She exhibited an unwillingness to negotiate reasonable terms or adopt a single practice in good faith. The record reveals similar actions with respect to reimbursement of medical expenses. At one point Wilson told Pittman not to repay her. The next minute she was asking the court to hold him in contempt for failing to reimburse her. Wilson also intentionally manipulated the requirement that Pittman reimburse medical expenses by February 15 to prevent him from taking the federal income tax exemption.

■ Wilson next argues that the trial court erred in modifying the visitation schedule without specific findings that a modification would be in the best interests of the children and without a showing that there had been a substantial and continuing change of circumstances since the original decree such as would render the previous order unreasonable. Wilson agreed with Pittman at trial that the court should set specific hours and periods of visitation.[2] She specifically asked the court to provide that she receive adequate notice and also ask the court "to solve future problems" by setting summer visitation hours when the children are in school. As we see it, Wilson conceded that circumstances had changed substantially and that the best

---

1. *See* I.C. 34–4–7–3 ("Every person who shall be guilty of any wilful disobedience of ... any order ... shall be guilty of an indirect contempt ...").

2. See R. 366: "We would just ask that the court enter a modification of the visitation that would reasonably reflect both parents' interests in spending quality time with the children."

interests of the children necessitated a change. Having consented to a modification, she may not object now and adopt a position inconsistent with that taken below. *Eyler*, 492 N.E.2d at 1075; *Winkler v. Winkler* (1969), 252 Ind. 136, 246 N.E.2d 375, 376; *In re the Marriage of Larkin* (1984), Ind.App., 462 N.E.2d 1338, 1342, n. 2.

■ We note with respect to Wilson's contention that the court failed to specially find certain facts, no request for special findings was made. In the absence of a request by one of the parties, no error is committed if the trial court does not sua sponte make special findings of fact. *Coster v. Coster* (1983), Ind.App., 452 N.E.2d 397, 401; *Clark*, 404 N.E.2d 23, 35.

■ Wilson next complains that the trial court erred in allocating the federal income tax exemption to Pittman. The trial court allocated both exemptions to Pittman in its original decree by incorporating the parties' agreement on the issue. Having failed to appeal the ruling earlier, Wilson may not raise it now. Wilson's allegations constitute a collateral attack which can have no effect on the original decree without a showing that the original judgment is void. *Holman*, 472 N.E.2d at 1287, n. 9.

Wilson argues the trial court inappropriately took into account circumstances existing at the time of the original decree, such as the fact that Pittman was in bankruptcy, in determining that a modification in the amount of child support was justified. Wilson maintains that Pittman's gross income has not changed and hence his financial condition is essentially the same as it was when the decree was entered. Wilson also contests the trial court's disallowance of certain pharmaceutical expenses, arguing that the disallowance is a retroactive modification of support.

The trial court modified the father's weekly child support obligation from $62.50 per child to $15.00 per child effective March 10, 1989 to and including October 6, 1989, but provided that that amount would be increased commencing with the payment due on October 13, 1989 in an amount to be determined at a subsequent hearing. The court also terminated Pittman's obligation for prescription medication and ordered Pittman to pay only half of the hospital, medical and dental expenses of the children not covered by his insurance.

■ The only question before us is whether the trial court abused its discretion in finding changed circumstances of such a substantial and continuing nature as to justify a modification in the terms of its earlier support order. I.C. 31–1–11.5–17(a); *Meehan v. Meehan* (1981), Ind., 425 N.E.2d 157, 160. On prior occasions, we have found no abuse of discretion where, as here, the evidence showed a slight decrease of the non-custodial parent's income and the remarriage of the custodial parent. *See, id.; Carlile v. Carlile* (1975), 164 Ind. App. 615, 330 N.E.2d 349. Many factors impact upon a parent's ability to pay besides and in addition to income. The trial court must consider the totality of relevant circumstances as they relate to two primary areas of concern: the parents' general economic condition as it affects their ability to financially provide for the children, and the children's needs. *McCallister v. McCallister* (1986), Ind.App., 488 N.E.2d 1147, 1152.

■ True, the trial court knew of the pendency of bankruptcy proceedings at the time it issued its original order. Perhaps, the trial court contemplated that the bankruptcy would enable Pittman to make a fresh start, as it apparently did Wilson. In any event, Pittman's financial condition has temporarily worsened and he has less net disposable income than he had in October, 1988.[3] (R. 0269). The trial court's modifi-

---

**3.** At the time of the decree the parties had jointly filed a petition for bankruptcy, but had not yet been given a discharge by the bankruptcy court. Pittman maintained three jobs at that time: he worked as a postal carrier, held a job in a convenience store and spent one weekend a month with the National Guard. Pittman quit the convenience store job after the divorce. At the time of the second hearing, he had net income after child support of $1000 per month. From that, he pays $500 per month to the bankruptcy trustee, $261.00 on his home mortgage, and $200 per month toward attorney fees incurred by his wife during the divorce proceed-

cation order takes into account the temporary but continuing nature of Pittman's financial difficulties. We cannot say the finding of substantial and continuing change in circumstances is against the logic and effect of the facts and circumstances before the court.

We find various grounds for affirming the trial court's order pertaining to the medical and prescription expenses represented by Wilson's exhibits 1, 2, 4, 5, and 6. The trial court modified its previous child support order retroactively to March 10, 1989, the date of Pittman's petition for modification of child support. Exhibit 5, which represents expenses incurred on March 23, 1989, is therefore the wife's responsibility.

■ The original decree provides that Pittman is to pay all reasonable medical, dental, hospital, optometric and pharmaceutical expenses not covered by his insurance. Pittman changed insurance carriers effective January 14, 1989 and notified Wilson that Wellborn HMO would now cover the cost of prescription medication for only a minimal fee. Wilson could have utilized Pittman's insurance but chose not to do so. Hence, prescription expenses incurred subsequent to January 14, 1989 which could have been avoided or minimized were properly disallowed.

■ Finally, with respect to the remaining expenses, incurred from September to December, 1988, we find the trial court properly disallowed these claims because the expenses were not shown to be reasonable. Pittman legitimately asked to be informed when the children needed medical care and medical expenses were to be incurred, yet Wilson refused to cooperate with him. Wilson made no effort at trial to show a reason for the expenses or explain the nature of the medical service provided her children. Wilson sought reimburse-

ment but failed to show she was entitled to it under the decree.

Lastly, Wilson contests the award of trial and appellate attorney's fees, arguing that it was inappropriate for the trial court to consider the merits of the case rather than the respective financial conditions of the parties. Wilson also contends the evidence is insufficient to sustain the award.

■ I.C. 31–1–11.5–24(c) authorizes the court to award reasonable attorney's fees in any action filed to enforce or modify visitation rights. In determining whether to award reasonable attorney's fees, the court may consider whether the petitioner substantially prevailed and whether the respondent knowingly or intentionally violated an order granting rights. *Id.*

In addition to those matters which we have already discussed, the record shows that Pittman could not afford the costs of depositions so his attorney's office transcribed them for him; that Wilson had a savings account and the ability to pay her own fees; and that Wilson threatened Pittman with litigation knowing of his inability to pay fees. Plainly, the trial court had a sufficient evidentiary basis for awarding trial and appellate fees to Pittman.[4] *Cf. Holman*, 472 N.E.2d at 1288.

Judgment affirmed.

RATLIFF, C.J., and STATON, J., concur in part and dissent in part with separate opinions.

RATLIFF, Chief Judge, dissenting in part and concurring in part.

For the reasons stated in the majority opinion in *In re Marriage of Davidson* (1989), Ind.App., 540 N.E.2d 641, the trial court had no authority to allocate income tax exemptions for the children of the parties. The original decree which allocated exemptions merely incorporated the parties' agreement. While it might have been

---

ings. He has $39.00 per month remaining for food, utilities and other expenses. He no longer has a vehicle. Pittman's obligation to the bankruptcy trustee will terminate in four months. At the present rate, he will pay off Wilson's attorney fees in seven months.

Wilson has remarried since the divorce. She has changed employment and taken a position which pays less. Her new husband is employed and makes about $15,000 per year.

4. Wilson does not contest the amount of the award or its reasonableness.

permissible for the trial court to incorporate the parties' agreement in the original decree, a matter which was not challenged and which is not an issue here, it is clear to me that the trial court lacked authority, upon modification, to re-allocate the tax exemptions. *Id.* Therefore, I dissent on this issue.

The trial court's drastic reduction in the support order at first blush appears to be harsh. However, given our standard of review, I cannot say the court's action in so modifying the support order was a clear abuse of discretion. I reluctantly concur in this portion of the majority opinion.

In all other respects I concur.

STATON, Judge, dissenting in part.

In addition to concurring in Judge Ratliff's opinion, I dissent from the Majority's position that no facts have to be found specifically to establish a substantial and continuing change in circumstances. Without a specific finding of those facts which the trial court considers the basis of its conclusion of law that a substantial and continuing change of circumstances has taken place, there is nothing to review on appeal. Instead, the review court finds itself in the place of a fact finder *in absentia* sifting through the record for evidence to support the action of the trial court. I do not agree that a TR 52 motion is necessary to achieve this result. [See TR 58(B)(3)]

Without some demonstration of these crucial findings of fact, the drastic reduction in support which concerns Judge Ratliff will leave some doubt as to the fairness and as to the soundness of the judgment.