**Cynthia Louise HARTZELL, Appellant–Petitioner Below,**

v.

**NORMAN T. L., Appellee–Respondent Below.**

No. 64A03–9211–CV–365.

Court of Appeals of Indiana,
Third District.

March 9, 1994.

Transfer Denied July 19, 1994.

---

V. Michael Drayton, Sallwasser and McCain, LaPorte, for appellant.

George R. Livarchik, Livarchik & Farahmand, Chesterton, for appellee.

STATON, Judge.

Cynthia Hartzell was found to be in contempt of court because of non-compliance with a visitation order. She appeals, presenting two (restated) issues:

I.  Was the dissolution court's contempt determination contrary to law?

II. May a dissolution court enter an order directing the conduct of a nonparty?

We affirm.

The marriage of Cynthia and Norman L. was dissolved on January 14, 1982 and Cynthia was awarded the custody of the parties' two children. Subsequently, Norman was awarded the custody of the parties' son while

Cynthia retained custody of the parties' daughter T.L. Norman's visitation rights included a right of visitation with T.L. during spring vacation. Norman was liable for travel expenses from Indiana to his home in Florida; Cynthia was ordered to provide transportation to the airport.

Prior to T.L.'s 1992 spring vacation, Norman notified Cynthia by letter that he intended to exercise his right to spring visitation and mailed an airline ticket for T.L. During a telephone conversation with Norman, T.L. indicated that she did not intend to participate in the scheduled visitation. Cynthia did not transport T.L. to the airport and T.L. did not appear in Florida for visitation.

On April 30, 1992, Norman filed a Petition for Rule to Show Cause concerning visitation. Hearing was held on July 24, 1992. On August 7, 1992, the dissolution court issued an order finding Cynthia in contempt of court, permanently enjoining Cynthia from interfering with Norman's visitation rights, ordering Cynthia to reimburse Norman for the unused airline ticket and appointing a guardian ad litem for T.L. Cynthia appeals.

## I.

### Finding of Contempt

Cynthia contends that she could not lawfully be held in contempt of court because there is no evidence that she willfully failed to comply with the visitation order. She insists that the lack of visitation resulted from T.L.'s refusal to comply rather than her own. Alternatively, she argues that her non-compliance was justified because T.L. alleged that Norman had sexually abused her.

In order for a person to be punished for contempt of a court's order, there must be an order or decree commanding the accused to do or refrain from doing something. *Wilson v. Pittman* (1990), Ind.App.,

555 N.E.2d 499, 501. Where an individual fails to act according to the commands embodied in a court decree, he or she bears the burden of establishing that the non-compliance was not willful. *Id.* at 502. Thus, the trial court's judgment will be reversed only if there is no evidence to support it. *Id.*

At the contempt hearing, Cynthia conceded that she did not transport T.L. to the airport as directed by court order. She testified that she "offered" transportation to T.L., but T.L. declined the offer.[1] A mere offer of transportation does not constitute compliance with the visitation order. Nor may Cynthia defend her inaction because of T.L.'s lack of cooperation, this defense having been specifically rejected by this court in *Clark v. Atkins* (1986), Ind.App., 489 N.E.2d 90, *trans. denied:*

> "Clark claims that these findings [of contempt] are wrong. She does not take issue with the court's finding that she was responsible for transporting the children; she argues that she did not deny Atkins his visitation. Instead, she contends that her daughters said that they did not wish to visit their father, and that she cannot be held responsible for the acts of third parties. Clark was under an obligation to return the children to Indiana for visitation. She did not attempt to do so. The children were minors over whom she had legal custody and authority. Thus, she is in no position to argue that her children's desires not to return justified her noncompliance."

*Id.* at 97.

Cynthia alternatively argues that her non-compliance was justified because T.L. alleged that she was sexually abused by Norman. However, the evidence presented at the contempt hearing discloses that T.L. merely *suspected* that she was sexually abused because of certain dreams.[2] Moreover, there is no

---

1. T.L. testified that Cynthia stated: "I will take you to the airport if you want to go, but if you don't, there's nothing he can do about that." Record, p. 108.

2. T.L. indicated that "signs pointed to" her molestation by Norman and related the substance of certain dreams: "Well, in one of them, I'm sitting on a man's lap and I can feel something like

pushing, you know, up my behind, and I feel like something is running down my leg. And I hear a man saying—I hear the man saying to the lady, that, 'We're going to have to teach her how to have sex because we're going to get rid of you later.' And he's telling that to the lady. And the lady did agree to him. And then later on, I wake up and there was nothing running down my leg

evidence that Cynthia was specifically informed of the suspicion before the scheduled spring visitation was denied.

 Assuming that Cynthia did, in fact, have reason to fear that T.L. would be at risk of sexual molestation during visitation with Norman, her remedy was to seek a modification of the court order. Instead, she defied the visitation order. Contempt proceedings are not designed to provide a review of the appropriateness of previous orders, but to vindicate the court's dignity and enforce litigants' rights under existing court orders. *Id.* at 96. The instant determination of contempt was not contrary to law.

## II.

### *Direction of Child's Conduct*

Next, Cynthia argues that the trial court lacked jurisdiction to issue an order related to future visitation which effectively forces the compliance of T.L., a non-party to the marital dissolution.

Pursuant to IND.CODE 31–1–11.5–24, a dissolution court is empowered to specify and enforce the visitation rights of the non-custodial parent. Moreover, a parent's visitation rights *shall not* be restricted unless the court finds that the visitation might endanger the child's physical health or significantly impair his emotional development. *Id.* Thus, dissolution courts are required to enter and enforce visitation orders which effectively direct the conduct of (non-party) children affected by a marital dissolution.

We recognize that in certain cases cited by Cynthia, this court has affirmed the decisions of dissolution courts declining to hold parents in contempt where young adults have refused visitation. *See Moody v. Moody* (1991), Ind.App., 565 N.E.2d 388 (children were 18 and 21) and *In Re Brown* (1992), Ind.App., 597 N.E.2d 1297 (child was 17). However, an adolescent's refusal to cooperate with scheduled visitation cannot divest a dissolution court of its authority to enforce its visitation orders. The dissolution court did not lack jurisdiction to require Cynthia to transport her 13 year old daughter to the airport in the future or risk sanctions.

Affirmed.

HOFFMAN and ROBERTSON, JJ., concur.

---

or anything, or it was just a memory or something. And then I had a dream about a lady and—which I think was my stepmother, because I can't remember, because it was a dream about me being by a bathtub and I could feel the (untranslatable) laying on top of me and messing with my privates, like my vagina, and all that." Record, p. 109.