ATTORNEY FOR APPELLANT
B. Scott Skillman
Terre Haute, Indiana

ATTORNEY FOR APPELLEE
Thomas E. Rucinski
Hammond, Indiana



# In the
# Indiana Supreme Court

No. 64S05-0709-CV-372

VALERIE RAICH BAXENDALE,

*Appellant (Petitioner below),*

v.

SAMUEL RAICH, III,

*Appellee (Respondent below).*

Appeal from the Porter Superior Court, No. 64D02-9712-DR-2527
The Honorable Robert P. Kennedy, Special Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 64A05-0610-CV-624

**January 15, 2008**

**Boehm, Justice.**

In 2006 the General Assembly replaced the single section governing child custody in the event of a relocation with a new chapter 2.2. We hold that under new chapter 2.2 the trial court may, but is not required to, order a change in custody upon relocation. In this case the trial court's balancing of relevant considerations was not clearly erroneous.

## Facts and Procedural History

Valerie Baxendale and Sam Raich divorced in 2000. They were granted joint legal custody of their two children, and Valerie was granted physical custody of both. The older child is now a college student, and his custody is not at issue.

After the divorce, Valerie, Sam, and the younger child, A.R., continued to live in Valparaiso, Indiana, which is in the greater Chicago metropolitan area. In 2001, Valerie graduated from law school and began employment in Chicago, but her position was eliminated fourteen months later. After a year seeking other legal employment in Illinois, Valerie expanded her search and received a job offer in Minneapolis, Minnesota.

On December 6, 2005, after accepting the position in Minneapolis, Valerie filed a Notice of Intent to Relocate with A.R., and Sam responded with a Petition for Modification of Custody. The parties apparently agreed that pending final resolution of custody, A.R., then eleven years old, would remain in Valparaiso with Sam. On July 28, 2006, Valerie moved for an emergency hearing to resolve the relocation issue before the beginning of the 2006 school year. The trial court held a hearing on August 14, 2006, and heard testimony from Valerie, Sam, and Margaret Mary Leitelt, an administrator at A.R.'s private school in Valparaiso. The trial court also interviewed A.R. in camera. The interview was not recorded or attended by counsel, and neither party requested to attend or record the interview.

On September 1, 2006, the trial court entered an order: (1) denying Valerie's request to relocate A.R.; (2) continuing joint legal custody of A.R.; and (3) providing that Sam would be the physical custodial parent if Valerie continued to reside in Minnesota, but if Valerie "returns to Indiana she will be the residential custodial parent."[1]

Valerie appealed this order, arguing that: (1) the trial court abused its discretion by modifying physical custody; (2) the trial court abused its discretion by excluding unspecified evidence claimed to bear on Sam's use of drugs and alcohol; and (3) the trial court's order violated her federal constitutional right to travel.[2] The Court of Appeals found the first issue dispositive and reversed the trial court. Baxendale v. Raich, 866 N.E.2d 333, 335 (Ind. Ct. App. 2007). We granted transfer. Baxendale v. Raich, ___ N.E.2d ___ (Ind. Sept. 25, 2007).

---

[1] Although the trial court refers to "residential custody," the statutes use the term "physical custody." For the sake of conformity to the statutes, we will use the latter term.

[2] Valerie also argues that the trial court erred by failing to enter findings of fact or conclusions of law supporting its September 1, 2006, order. We do not address this argument under the doctrine of invited error. See Jolly v. Modisett, 257 Ind. 426, 429, 275 N.E.2d 780, 782 (Ind. 1971). Valerie and Sam advised the trial court that they did not believe findings and conclusions were necessary.

## I. The Modification Order

Custody modification is addressed in the general provisions governing child custody orders. In 1985 a section was added to the custody chapter specifically dealing with relocation, and in 2006 a new chapter addressing relocation replaced it. The interplay of these provisions presents an issue of first impression.

A. *Modification and Relocation Statutes*

In general, an initial child custody order is determined "in accordance with the best interests of the child." Ind. Code § 31-17-2-8 (2004) ("Section 8"). The court is to "consider all relevant factors" in determining the child's best interests, including a nonexclusive list of factors, one of which is the wishes of the child. Id. The court is authorized to interview the child in camera, either with or without counsel present. Id. § 31-17-2-9. If counsel is present, a record may be made of the interview. Id.

The general provision governing custody modification is found in section 31-17-2-21 ("Section 21"). Modifications are permitted only if the modification is in the best interests of the child and there has been "a substantial change" in one or more of the factors identified in Section 8 as considerations in the initial custody determination. Id. § 31-17-2-21(a). These include the wishes of the child and the interrelationship of the child with parents, siblings, and others "who may significantly affect the child's best interests." Id. § 31-17-2-8.

Before July 1, 2006, changes in custody upon relocation were governed by section 31-17-2-23, which became effective in 1985 and was the first provision specifically addressing relocation-based modifications.[3] This section required a custodial parent to provide the noncustodial parent with a notice of intent to move if the custodial parent intended to move to a residence not specified in the custody order that was either outside Indiana or at least 100 miles from the custodial parent's county of residence. Either party could then request the court to review and modify the custody order, "if appropriate." In determining whether to modify a custody order, the trial court was required to consider the distance involved in the proposed change of residence

---

[3] This section was initially codified as section 31-1-11.5-21.1. It was reformatted and recodifed without substantive changes as section 31-17-2-23 in 1997. Act of May 13, 1997, Pub. L. No. 1-1997, § 9. In 2006, Public Law 50-2006 repealed section 31-17-2-23 and added a new chapter 31-17-2.2, "Relocation."

and the hardship and expense involved for the noncustodial parent to exercise parenting time rights.  Under this original relocation section, "[a] custodial parent's relocation, alone, [would] not support a modification of custody; rather, it is the effect of the move upon the child that renders a relocation substantial or inconsequential—i.e., against or in line with the child's best interests—when determining whether to change custody."  Green v. Green, 843 N.E.2d 23, 27 (Ind. Ct. App. 2006) (citing Lamb v. Wenning, 600 N.E.2d 96, 99 (Ind. 1992)).  As Lamb pointed out, a relocation may or may not involve a substantial change affecting the child's best interests, depending on the child's age, interrelationship with others, and degree of engagement in social, educational, and recreational opportunities.  600 N.E.2d at 99.

On July 1, 2006, shortly before the hearing in this case, an entire new chapter 2.2 governing relocation in child custody cases was added to the "Custody and Visitation Rights" article of the Family Law title in the Indiana Code.[4]  I.C. §§ 31-17-2.2-1 to -6 (West Supp. 2007).  The new chapter uses a set of defined terms.  "Relocation" is "a change in the primary residence of an individual for a period of at least sixty (60) days," and no longer requires a move of 100 miles or out of state.  Id. § 31-9-2-107.7.  A "relocating individual" is someone who "has or is seeking: (1) custody of a child; or (2) parenting time with a child; and intends to move the individual's principal residence."  Id. § 31-9-2-107.5.  A "nonrelocating parent" is someone "who has, or is seeking:  (1) custody of the child; or (2) parenting time with the child; and does not intend to move the individual's principal residence."  Id. § 31-9-2-84.7.  Upon motion of either parent, the court must hold a hearing to review and modify custody "if appropriate."[5]  Id. § 31-17-2.2-1(b).

---

[4] Neither party contends that pre-2006 law governs this case.  The Court of Appeals applied the new chapter, Baxendale, 866 N.E.2d at 336, consistent with its prior holding that "an amendment to a custody modification statute is the controlling authority for a custody modification hearing taking place after the amendment's effective date irrespective of whether the custody modification petition was filed before the amendment's effective date."  Wiggins v. Davis, 737 N.E.2d 437, 440 n.1 (Ind. Ct. App. 2000) (citing Van Schoyck v. Van Schoyck, 661 N.E.2d 1, 5 (Ind. Ct. App. 1996)).  But see Ell v. Bagby, 875 N.E.2d 410, 412 (Ind. Ct. App. 2007), reh'g denied ("As a general rule, the law in place at the time an action is commenced governs." (quoting Ind. Dep't of Envtl. Mgmt. v. Med. Disposal Servs., Inc., 729 N.E.2d 577, 581 (Ind. 2000))).

[5] There are two ways to object to a proposed relocation under the relocation chapter:  a motion to modify a custody order, § 31-17-2.2-1(b), and a motion to prevent relocation of the child.  Id. § 31-17-2.2-5(a).  The Court of Appeals appears to have analyzed the facts under the second option.  Baxendale, 866 N.E.2d at 336–37.  This route requires the relocating individual first to prove that "the proposed relocation is made in good faith and for a legitimate reason."  I.C. § 31-17-2.2-5(c).  If this burden is met, the nonrelocating individual must prove that "the proposed relocation is not in the best interest of the child."  Id. §

4

In determining whether to modify a custody order, the court is directed to consider several additional factors that are set out in section 31-17-2.2-1(b) and are specific to relocation.[6] In general, the court must consider the financial impact of relocation on the affected parties and the motivation for the relocation in addition to the effects on the child, parents, and others identified in Section 8 as relevant to every change of custody.

The new relocation chapter raises the question of when it is "appropriate" for the trial court to modify a custody order in the relocation setting. The Court of Appeals concluded that the general change of custody provision found in Section 21 applies both to general custody modifications and to relocation-driven modifications, with the relocation chapter providing "additional guidance." Baxendale, 866 N.E.2d at 337. We agree with the Court of Appeals that relocation does not require modification of a custody order.

For several reasons, we do not agree with the Court of Appeals that Section 21 requires that a change in one of the original Section 8 factors be found before a change may be ordered after a relocation. First, chapter 2.2 is a self-contained chapter and does not by its terms refer to the general change of custody provisions. Second, the relocation chapter introduces some new factors that are now required to be balanced, but also expressly requires consideration of "other the factors affecting the best interest of the child." I.C. § 31-17-2.2-1(b)(6). The general custody

---

31-17-2.2-5(d). If the nonrelocating individual does not file a motion to prevent relocation of the child, the relocating individual with custody of the child may relocate. Id. § 31-17-2.2-5(e). However, the record in this case, though incomplete, does not suggest that Sam filed a motion to prevent relocation of A.R under section 31-17-2.2-5(a). The relocation chapter was not effective until after Sam's Petition to Modify Custody, so it is unlikely that Sam would have filed a motion to prevent relocation of A.R. Further, Valerie's Motion for Emergency Hearing on Relocation states that Sam filed a Petition for Modification of Custody and this is unchallenged, so we will review the trial court's ruling as on a petition to modify under section 31-17-2.2-1(b), not as a ruling on a petition to prevent relocation under section 31-17-2.2-5. In any event, our result would be the same for either motion because when a relocation is made in good faith, as is Valerie's, both analyses ultimately turn on the "best interests of the child."

[6] These factors are (1) the distance involved in the proposed change of residence; (2) the hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation; (3) the feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties; (4) whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child; (5) the relocating parent's reasons for relocating the child and the nonrelocating parent's reasons for opposing the relocation of the child; and (6) other factors affecting the best interest of the child. Id. § 31-17-2.2-1(b).

determination required under Section 8 is to find "the best interests of the child" by examining the factors listed in that section. As a result, chapter 2.2 incorporates all of the Section 8 considerations, but adds some new ones. Because consideration of the new factors might at least theoretically change this balance, the current statutory framework does not necessarily require a substantial change in one of the original Section 8 factors. Finally, section 31-17-2.2-2(b) of the relocation chapter expressly permits the court to consider a proposed relocation of a child "as a factor in determining whether to modify a custody order." Because section 31-17-2.2-1(b) already contains a list of relocation-oriented factors for the court to consider in making its custody determination, section 31-17-2.2-2(b) seems to authorize a court to entertain a custody modification in the event of a significant proposed relocation without regard to any change in the Section 8 factors. In most cases the need for a change in a Section 8 factor is likely to be academic because a move across the street is unlikely to trigger opposition, and a move of any distance will likely alter one of the Section 8 factors. For example, Section 8 requires evaluation of the effect of relocation on the interaction between the child and other individuals and the community. It is hard to imagine a relocation of any distance where there is no effect on the "interaction" of parents, etc. with the child or the child's adjustment to home, school, and community.

The fundamental point recognized in Lamb under the 1985 statute is that a relocation may or may not have significant effects on the child's best interests. 600 N.E.2d at 99 ("[W]here a very young child or baby is involved, a move out of state may have little or no effect on the child. For an older child who has formed friendships, attends school, and participates in activities or sports, is involved in church, or enjoys the security of supportive relationships with nearby relatives or others in his community, a move out of state may have a much more significant effect."). This observation remains valid under the current relocation chapter. Similarly, the effect on the child's relationships with others will vary widely with the individual circumstances of the child and the significant individuals in the child's life. We therefore adhere to the view under the current statute that relocation may or may not warrant a change of custody.

B. *Modification of A.R.'s Custody*

After an in camera interview with A.R. and a full-day hearing on Sam's Petition to Modify Custody, the trial court denied Valerie's request to relocate A.R. and granted physical cus-

tody to Sam. The parties did not request specific findings, and the trial court's order contains none.

"In the absence of special findings, we review a trial court decision as a general judgment and, without reweighing evidence or considering witness credibility, affirm if sustainable upon any theory consistent with the evidence." Perdue Farms, Inc. v. Pryor, 683 N.E.2d 239, 240 (Ind. 1997) (citations omitted). Judgments in custody matters typically turn on essentially factual determinations and will be set aside only when they are clearly erroneous. We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. The concern for finality in custody matters reinforces this doctrine. See Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002) (citing In re Marriage of Richardson, 622 N.E.2d 178, 178 (Ind. 1993)).

Valerie is correct that the fact of relocation alone does not of itself require a change in custody. However, the circumstances surrounding a relocation can create substantial changes for the child, including changes in the factors described in Section 8 and also those provided by the relocation chapter. Evidence of the circumstances surrounding this proposed relocation was presented at trial. There are several factors, some more persuasive than others, evidenced in the record that the trial court could have found to support a change in custody to permit A.R to remain in Valparaiso. These include his improved school performance, proximity to his older brother and grandmother, established athletic and extracurricular relationships, availability of other family members to provide care during temporary parental absences, and the greater cost of proposed education in Minneapolis. Obviously, we can speculate that the court's in camera interview also affected the court's conclusion as to the child's wishes. But there is nothing in the record that gives us any basis to conclude that this factor was significant in the trial court's ruling. Because of the presence of the other factors, however, we cannot say that the trial court abused its discretion in modifying the custody order. Modification is permissible because of substantial changes in A.R.'s interaction with his father, grandmother, and brother, and his adjustment to school and other activities, irrespective of A.R.'s unrecorded wishes.

7

### III.  Evidence of Drug and Alcohol Abuse

Valerie contends that the trial court abused its discretion by not allowing her to testify regarding Sam's "alcohol and drug abuse history" as it relates "to his ability to effectively be a custodial parent."  Evidence of a parent's drug or alcohol use can be relevant to that parent's health and the child's best interests.  See Russell v. Russell, 682 N.E.2d 513, 515 (Ind. 1997) (describing husband's prior drug use as "undoubtedly relevant" to best interests of children).

Valerie did not preserve this claimed error for appeal because she made no offer of proof. Indiana Rule of Evidence 103 requires that an objecting party provide "the substance of the evidence," or that the substance of the evidence be apparent from the context.  Neither occurred here.  The entire record on this issue consists of Valerie's counsel asking her whether there were "any drugs or alcohol involved in . . . family activities."  Sam's counsel objected, and Valerie's counsel explained that

> We're dealing with relocation issues, custody of a child, single parenting.  [Valerie] had custody for a number of years following the entry of the divorce. There's reference in the original custody decree to alcohol playing a role in the life of this family.  I think we should find out if alcohol continues to play a role in the life of this family, and if so, to what extent.

There is no showing what the anticipated evidence would have been.  Testimony could have ranged from highly relevant drug use to nonabusive and moderate use of alcohol, or even that neither was in use.  Failure to make an offer of proof precludes raising this issue on appeal.

### IV.  Right to Travel

Finally, Valerie argues that the trial court's order violates her federal constitutional right to travel by forcing her to choose between moving to Minnesota and retaining physical custody of A.R.  Only one Indiana case discusses this right in the context of a custody order.  Clark v. Atkins, 489 N.E.2d 90 (Ind. Ct. App. 1986), trans. denied.  In Clark, the trial court permitted the mother to travel with her children to Oklahoma to pursue an educational opportunity on the condition that she return the children to Indiana upon her graduation or termination of enrollment. Id. at 99.  The mother argued that this restriction violated her right to travel.  Id.  The Court of Appeals upheld the trial court's order, reasoning that "[t]he straightforward answer to Clark's argument is that the court's order does not impose any necessary burden whatever upon *her* right

to travel. She remains free to go wherever she may choose. It is the children who must be returned to Indiana." Id. at 100 (citations omitted).

We think the Clark formulation does not give appropriate recognition to the rights of the relocating parent. The Supreme Court of the United States has held that all citizens have a right to interstate travel "uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement," Shapiro v. Thompson, 394 U.S. 618, 629, 631 (1969), overruled in part on other grounds by Edelman v. Jordan, 415 U.S. 651, 671 (1974), and laws that chill that right with no other purpose are "patently unconstitutional." Id. (quoting United States v. Jackson, 390 U.S. 570, 581 (1968)).

No Supreme Court case has addressed the interaction between a parent's right to travel and a child custody order, but several state courts have considered how Shapiro applies in the child custody context. One state reads Shapiro as weighting the scale in favor of the parent's right to travel.[7] Others view the child's best interests as trumping the parent's right to travel.[8] And yet others balance the relocating parent's right to travel with two other important interests— the best interests of the child and the nonrelocating parent's interest in the care and control of the child.

We agree with those courts that take Shapiro as recognizing that a chilling effect on travel can violate the federal Constitution, but also acknowledging that other considerations may outweigh an individual's interest in travel. We think it clear that the child's interests are powerful countervailing considerations that cannot be swept aside as irrelevant in the face of a parent's claimed right to relocate. In addition, it is well established that the nonrelocating parent's interest in parenting is itself of constitutional dimension. Troxel v. Granville, 530 U.S. 57, 64 (2000) (citing Pierce v. Soc'y of Sisters, 268 U.S. 510, 534–35 (1925)). In short, we agree with the recent well-reasoned opinion of the Colorado Supreme Court that the trial court is to balance these considerations. In re Marriage of Ciesluk, 113 P.3d 135, 146 (Colo. 2005). In the custody con-

---

[7] The parent's right to travel with children prevails unless "clear evidence before the court demonstrates another substantial and material change of circumstances and establishes the detrimental effect of the move upon the children." Watt v. Watt, 971 P.2d 608, 616 (Wyo. 1999) (citations omitted).

[8] LaChapelle v. Mitten, 607 N.W.2d 151, 163–64 (Minn. Ct. App. 2000); Ziegler v. Ziegler, 691 P.2d 773, 780 (Idaho Ct. App. 1985).

text, Indiana's statutes reflect these concerns by considering whether the relocation is indeed bona fide, and explicitly acknowledging the child's interests and the effect on nonrelocating persons, including a nonrelocating parent. Valerie's reason for relocating certainly appears valid, but this is not a case, as Valerie argues, where she is unable to take employment out of state "for fear that the state will take her child." Under the terms of this final custody order, Valerie retains significant involvement with A.R. A.R.'s interests in continuity of education and contact with other family members and Sam's interest in parenting A.R. are significant and justify the trial court's custody order.

## Conclusion

The trial court's order granting physical custody to Sam is affirmed.

Shepard, C.J., and Dickson and Rucker, JJ., concur.
Sullivan, J., dissents, believing the decision of the Court of Appeals in this case to be correct.