**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**LISA K. ROSENBERGER**
Vevay, Indiana

ATTORNEY FOR APPELLEE:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

FILED

May 09 2012, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | |
| TANYA A. (BENNETT) LOUDERBACK, | ) | |
| | ) | |
| Appellant-, | ) | |
| | ) | |
| vs. | ) | No. 58A01-1109-DR-449 |
| | ) | |
| EDWARD L. BENNETT, | ) | |
| | ) | |
| Appellee-. | ) | |

APPEAL FROM THE OHIO CIRCUIT COURT
The Honorable James D. Humphrey, Judge
Cause No. 58D01-0509-DR-18

**May 9, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Tanya Louderback (Mother) appeals the trial court's order granting Edward Bennett's (Father) motion to modify custody of A.B., the minor child born to the marriage of Mother and Father, awarding primary physical custody to Father. Mother presents the following consolidated, restated issues for review:

1. Did the trial court err in sua sponte conducting a provisional hearing on Father's modification request?

2. Did the trial court abuse its discretion by modifying custody of A.B.?

We affirm.

The facts are that Mother and Father divorced in Ohio County, Indiana when A.B. was four years old. Pursuant to a settlement agreement submitted by the parties, Mother was awarded primary physical custody of A.B. and Father was granted visitation rights consistent with the Indiana visitation guidelines, as well as any extra visitation upon which the parties agreed. Because of the nature of Father's employment, Father exercised visitation with A.B. well beyond the minimum amount set out in the Indiana guidelines – sometimes as much as fifteen days per month. Five years after the dissolution, Mother informed Father that she was moving from her home in Ohio County, where both parties had lived since the divorce, to Nancy, Kentucky. Mother later advised the court, after she had already moved, that the reason for the move was to secure employment and to be close to her family, including her mother. Mother had been unemployed since 2008, and had been living on child support, unemployment compensation, and income derived from a previous husband. Mother did, in fact, move to Nancy after the completion of the 2010-2011 school year. She and her boyfriend moved into her mother's residence there. Prior to the move, A.B. had seen her

2

maternal grandmother only once or twice per year. After she moved there, Mother obtained work at a marina earning $7.45 per hour.

At the time Mother moved, Father, who continued to reside in Ohio County, had been in a relationship with Carey Nowlin for three years and the two were engaged to be married. A.B. enjoyed a good relationship with Nowlin and Nowlin's seven-year-old daughter. A.B. also enjoyed a "very close" relationship with her paternal grandparents, who lived in Ohio County, and spent a lot of time with them before the move. *Appellant's Appendix* at 24.

In May 2011, Father filed a Motion to Modify Custody, seeking primary physical custody of A.B. Prior to the resolution of that motion, the court established a summer visitation schedule, as Mother had moved too far away to make the previous arrangement tenable. A hearing was held on Father's modification petition on August 8. On August 12, the court granted the petition to modify and awarded primary physical custody to Father. Relevant portions of the court's order are set out as follows:

> 4. Both parties and the minor child have resided in Ohio County, Indiana throughout the child's life.
> 5. Mother verbally informed Father on Easter, 2011 that she intended to relocate with the child to Nancy, Kentucky, which is approximately four (4) hours (and 200 miles) from Father's residence. Mother did relocate with the child at the conclusion of the 2010-2011 school year and filed a written Notice of Relocation with the Court on June 13, 2011.
> 6. The stated purpose of Mother's relocation was to secure employment and to be close to her family. Mother, the child and Mother's boyfriend are presently residing in Nancy, Kentucky with the child's maternal grandmother.
> 7. Father continues to reside in Ohio County with his fiancé, Carey Nowlin, and her seven (7) year old daughter, both of whom have been in the child's life for approximately three (3) years. Testimony was given that [A.B.] has developed a positive and loving relationship with Carey and a sibling-like relationship with her daughter.

3

8. Since the dissolution of the parties' marriage, Mother has been married and divorced again and is now living with a boyfriend of several months.

9. Subsequent to her relocation, Mother obtained employment at the Wolf Creek Marina earning an hourly wage of $7.25. Prior to obtaining employment, Mother has not worked outside the home since 2008, testifying that she relied on child support, unemployment and the income from her prior husband to support herself and [A.B.]. Mother's work schedule will allow her to take their daughter to school every day and be available most evenings with a third party/relative caring for [A.B.] a few hours after school, two to three times per week.

10. Father is presently employed … and has been so employed for approximately fourteen (14) years earning an hourly wage of $18.96. His gross weekly income averages $758.40. Father is providing medical insurance for the child through his employment at a cost of $11.72 per week. Father works swing shift and Father will require assistance from his girlfriend and extended family to care for [A.B.].

11. Since the parties' dissolution of marriage, Father has consistently exercised his parenting time with [A.B.], increasing that time to include additional days per week, for several months prior to Mother's relocation.

12. Uncontested evidence was presented that [A.B.] shares a very close relationship with her paternal grandparents and prior to the relocation was able to spend time with them on a consistent basis anytime that she was with Father and at other times.

13. Based upon the testimony of Mother, prior to the relocation, [A.B.] spent time with her maternal grandmother one (1) to two (2) times per year.

14. [A.B.] has been enrolled and attended Ohio County Elementary School since the commencement of her education. [A.B.] has struggled academically. She has attended summer school in the past and summer school was recommended at the conclusion of the past school year; however, Mother relocated and did not follow through with that recommendation.

15. [A.B.'s] community has been centered in and around Rising Sun throughout her life and she has friends in that community and particularly in her school environment. Mother testified that [A.B.] has not yet built "many" friendships in Kentucky.

16. [A.B.] has continuously been provided with too much information regarding issues between the parties, most recently regarding these legal proceedings, causing her unnecessary emotional distress and anxiety and allowing her to feel caught between her parents. Mother admitted discussing court dates and attorney meetings. [A.B.], at the tender age of 10, was requested by Mother to come to a meeting with Mother and Father to make

arrangements discuss [sic] custody and parenting time. The Court finds this very inappropriate.

17. After Mother's relocation, the parties have continued every other weekend parenting time but have been unable to continue midweek parenting time due to the significant distance in the relocation. …

18. Due to Mother's relocation, Father is incurring significant expenses in driving to and from Lexington, Kentucky (the approximate ½ way point) to pick up and return his child during weekend parent time. Father likewise will be unable to as involved [sic] in school events/extracurricular activities with the child.

\* \* \* \* \*

## DECISION

After giving a great amount of consideration to the evidence presented on all of the above the Court NOW FINDS that:

1. There has been a substantial and ongoing change in circumstances since the issuance of the parties' Decree of Dissolution of Marriage in 2006, including, but not limited to the recent relocation of Mother. The details of the finding are found in the findings of fact contained herein.

2. Despite Mother believing there is a need to relocate to secure employment, she provided insufficient evidence to prove that her new job and living arrangement will provide any substantial benefit to the parties' child.

3. Furthermore, it is the opinion of this Court that Mother obtaining a job earning the equivalent of minimum wage does not outweigh the child's loss of regular and consistent contact with her father, extended family, friends and community.

4. Father is in a position to provide [A.B.] with a loving, supportive and stable home environment, continuity of contact with her extended family, peers, school and community, and emotional and financial support.

*Appellant's Appendix* at 23-28. The court went on to award primary physical custody to Father. Mother contends this decision was an abuse of discretion.

5

Mother first contends, "The Trial Court had no authority to Order a Provisional Hearing without a request, and establish Father's summer visitation." *Appellant's Brief* at i. The hearing in question was held to resolve custody issues for the summer of 2011, and accomplished that end. Obviously, that summer has passed. Therefore, we will not address the propriety of convening the hearing and establishing a summer visitation schedule because the issue is now moot. *See In re Lawrance,* 579 N.E.2d 32, 44–45 (Ind. 1991) (holding that "[a]n appeal becomes moot and should be dismissed when the controversy or dispute originally existing at the time of the commencement of the action ceases to be a concrete one requiring settlement, loses its essential character, is no longer live, or the court on appeal is unable to render effective relief").

2.

Mother contends the trial court erred in modifying the original custody order. We note at the outset that the trial court's judgment was accompanied by findings and conclusions. When we review such judgments, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). Upon appeal, we will not reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment. *Best v. Best*, 941 N.E.2d 499 (Ind. 2011). "'Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference.'" *Id.* at 502 (quoting *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262

(Ind. 1997)).

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best v. Best*, 941 N.E.2d at 502.

As a preliminary matter, Mother claims the trial court applied the wrong legal standard in making its determination. The trial court's modification order was primarily set out in terms of the general criteria for modifying an existing custody order under Ind. Code Ann. § 31-17-2-21 (West, Westlaw through legislation effective March 14, 2012) and I.C. § 31-17-2-8 (West, Westlaw through legislation effective March 14, 2012). Mother contends this was error and that the court was instead required to apply the two-part test set out in *T.L. v. J.L.*, 950 N.E.2d 779 (Ind. Ct. App. 2011), pertaining to objections by a non-relocating parent to the other parent's motion to relocate a child that is the subject of an existing custody order. In this case, however, Mother never filed a motion to relocate A.B. It is not surprising, then, that Father did not file an objection to a non-existent motion to relocate. *T.L.* is inapposite in this respect. The only motion before the court was Father's motion to modify custody. Mother's relocation to Kentucky was the "changed circumstance" upon which this motion was primarily based. Moreover, after the fact, Mother filed a "Notice of Relocation" informing the court on June 10, 2011 that she had moved with A.B. to Kentucky approximately ten days before. Thus, Father's motion to modify custody predated Mother's

7

notification of relocation. Therefore, the standard of review is that which pertains generally to motions to modify custody.

Under I.C. § 31–17–2–21, a court may not modify a child custody order unless modification is in the child's best interests and there is a substantial change in at least one of several factors that a court may consider in initially determining custody. These factors include:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:
    (A) the child's parent or parents;
    (B) the child's sibling; and
    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:
    (A) home;
    (B) school; and
    (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian....

I.C. § 31–17–2–8. In determining whether modification would be in the child's best interests, the court must consider not only those factors specifically enumerated in the statute, but also any other relevant factors. *See Baxendale v. Raich,* 878 N.E.2d 1252 (Ind. 2008).

8

"In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating the existing custody should be altered." *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind. 2002).

If Mother had filed a petition asking permission to relocate with A.B. in Kentucky, Father could have responded in one of two ways – either to seek an order preventing a relocation, or to file a motion for change of custody. *See Baxendale v. Raich*, 878 N.E.2d 1252. I.C. § 31-17-2.2-1(b) (West, Westlaw through legislation effective March 14, 2012) sets forth the criteria a court should consider when determining whether to permit such relocation or to modify custody as a result of relocation. Although Mother did not file such a request, Father's petition for modification was premised upon her relocation, and the factors listed in I.C. § 31-17-2.2-1(b) provide useful guidance in considering whether and how a relocation would impact A.B.'s best interests. Therefore, like the trial court did, we will assess A.B.'s best interests against the criteria set out in I.C. § 31-17-2.2-1(b), which provides:

> (b) Upon motion of a party, the court shall set the matter for a hearing to review and modify, if appropriate, a custody order, parenting time order, grandparent visitation order, or child support order. The court shall take into account the following in determining whether to modify a custody order, parenting time order, grandparent visitation order, or child support order:
>
> > (1) The distance involved in the proposed change of residence.
> >
> > (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.
> >
> > (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the

9

financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:
    (A) relocating individual for seeking relocation; and
    (B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1(b).

The first factor is the distance involved in the relocation. It was undisputed that Mother's relocation to Nancy, Kentucky spanned a distance of approximately 200 miles, and that the trip from Ohio County to Nancy took approximately 4 hours. This distance is sufficient to cause a significant change in A.B.'s life with respect to the contact she will have with the family members in Ohio County, with whom she shares a close relationship and with whom she is accustomed to spending a significant amount of time. Of course, it will also necessitate a change in schools and leaving friends behind.

Under I.C. § 31-17-2.2-1 (b)(2), we consider the hardship and expense involved for Father and his mother – A.B.'s paternal grandmother - to exercise parenting time or grandparent visitation, respectively. Again, there was no evidentiary dispute that the distance between Ohio County and A.B.'s new home posed a hardship on Father and his family in exercising their visitation rights. Father was required to travel approximately 200 miles, round-trip, to pick up A.B. from Nancy and take her home to Ohio County, because he and Mother met approximately halfway to make the exchange. This resulted in the expenditure

of considerable time and expense on Father's part.

Under Subsection (b)(3), we consider the feasibility of preserving the relationship between Father and A.B., and between Father's family and A.B., through visitation arrangements, and also examine the financial circumstances of the parties. It was undisputed that Father consistently exercised his allotted visitation time with A.B., which included one day per week, and even "increased that time to include additional days per week, for several months prior to Mother's relocation." *Appellant's Brief* at 24. Moreover, because of the great distance involved, Father will be unable to be as involved in A.B.'s school and extracurricular activities as he was before. Because of the great distance involved in the relocation, Father and his family were no longer able to exercise midweek visitation with A.B. Finally, because he was required to drive to Lexington, Kentucky to pick up and drop off A.B., Father incurred significant expenses as a consequence of the trips back and forth, including fuels costs and wear and tear on his vehicle.

Under Subsection (b)(4), we consider whether there is an established pattern of conduct by Mother that either promoted or thwarted Father's contact with A.B. We can find no instances in the record indicating that this factor weighs one way or the other.

Under Subsection (b)(5), we consider the reasons provided by Mother for seeking relocation and Father's reasons for opposing relocation. Mother claimed that she moved to Kentucky to secure employment. After moving, however, Mother was able to obtain what amounted to only minimum-wage employment. Father was opposed to moving A.B. to Kentucky because of the significant detrimental impact it had on the amount of time he and

11

his family would be able to spend with her, and he would be unable to play as active a role in her life as he had before the move. Moreover, A.B. would be forced to move away from her community at large – the only community she had known. We agree with the trial court that the type of employment Mother was able to secure did "not outweigh [A.B.]'s loss of regular and consistent contact with her father, extended family, friends, and community." *Appellant's Appendix* at 28.

Finally, under Subsection (b)(6), a court may consider "[o]ther factors affecting the best interest of the child." The record reveals that A.B. struggles academically, and that it was recommended that A.B. enroll in summer school in the summer of 2011, which was the summer after Mother moved to Kentucky. Mother failed to follow that recommendation. There is evidence that Father's life has a stability that Mother's life lacks. Father has been dating Nowlin for several years and A.B. has a close relationship with both Nowlin and her seven-year-old daughter. Mother, on the other hand, has been married and divorced since her divorce from Father, and was living with another man at the time this appeal was filed. Father has worked for the same employer for approximately fourteen years and earns almost $19 per hour, while Mother had worked at a BP in Ohio County until 2008, after which she lived on unemployment benefits and child support payments.

Also, the trial court was concerned that Mother was acting "very inappropriate[ly]" in sharing with A.B. "too much information" regarding the issues between the parties concerning this custody dispute. *Id*. at 25. As a final matter, there was evidence that Mother had failed to vigorously pursue medical treatment for A.B. when A.B. suffered from warts,

12

and that the condition was cured only after Father intervened. There was also evidence that A.B. had begun orthodontia treatment. Because Mother neglected to take her for several appointments, the orthodontist cancelled their contract and notified Mother that she should have the appliances removed from A.B.'s mouth immediately. When Father learned what had happened, he contacted the provider, scheduled an appointment, and "got it taken care of." *Transcript* at 87. According to Father, A.B. is now "back on track" "to see about braces." *Id.*

We acknowledge that "[a] custodial parent's relocation out of state which makes visitation inconvenient does not in itself warrant child custody modification." *Hanks v. Arnold*, 674 N.E.2d 1005, 1008 (Ind. Ct. App. 1996). In this case, however, there was more than just Father's inconvenience at the heart of his request for modification, and which formed the basis for the trial court's ruling. The foregoing discussion reflects that A.B. is a lifelong resident of Ohio County and has friends and extended family there with whom she has enjoyed close relationships her whole life. The same is not true of Nancy, Kentucky, where Mother sought to relocate A.B. A.B.'s teachers and tutors in Ohio County are familiar with A.B.'s particular academic problems and are well situated to address those issues. It appears that Father had been more diligent than Mother in matters pertaining to A.B.'s medical issues and needs. The trial court's findings on these matters are supported by the evidence presented at the hearing. The findings, in turn, support the trial court's conclusion that Mother's relocation to Kentucky was a significant change of circumstances that negatively impacted A.B. in several ways. They also support the conclusion that changing

the original arrangement and awarding primary physical custody to Father, who remains in Ohio County, is in A.B.'s best interest. Therefore, the trial court did not abuse its discretion in granting Father's request to modify custody and award primary physical custody of A.B. to him.

Judgment affirmed.

MAY, J., and BARNES, J., concur.