**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 22 2013, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KEVIN L. LIKES**
Auburn, Indiana

ATTORNEY FOR APPELLEE:

**ANDREA R. TREVINO**
Beckman Lawson, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE PATERNITY OF K.S.: | ) | |
| | ) | |
| M.M. (Mother), | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 17A03-1209-JP-390 |
| | ) | |
| J.S. (Father), | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE DEKALB CIRCUIT COURT
The Honorable Kevin P. Wallace, Judge
Cause No. 17C01-0903-JP-36

**May 22, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, M.M. (Mother), appeals the trial court's Order awarding Appellant-Respondent, J.S. (Father), primary physical custody of their minor child, K.S.

We affirm.

## ISSUE

Mother raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion when it awarded Father physical custody of the minor child.

## FACTS AND PROCEDURAL HISTORY

K.S. was born on March 8, 2007, in Auburn, DeKalb County, Indiana. Mother and Father were not married at the time of K.S.'s birth and they separated shortly thereafter. After the separation, both Mother and Father resided in Fort Wayne, and agreed to share their time with K.S. on a weekly basis. In 2009, Mother filed a petition to establish Father's paternity, while Father responded with a petition to establish custody and parenting time. On July 23, 2009, the trial court issued an order, confirming Father's paternity, temporarily continuing the parties' joint legal custody and equal parenting time arrangement, and referring the parties to mediation. Mother and Father continued the parenting arrangement until September 2009, at which time Father became K.S.'s primary physical custodian. This change resulted by agreement of the parties due to Mother's schedule and her inability to care for the child on an every-other-week basis. Under this modified arrangement, which lasted approximately four months, Mother exercised parenting time with K.S. on alternate weekends. Following a final hearing on

July 15, 2010, the trial court awarded the parties joint legal custody and equal parenting time; Father was ordered to pay weekly child support. As part of this order, the trial court acknowledged that both parties lived in Fort Wayne but that Mother intended to move to Auburn, Indiana.

In October of 2010, Mother relocated from Fort Wayne to Auburn. Around the same time, Father started discussions with Mother as to where K.S. should attend a prekindergarten program. Despite multiple correspondences from Father proposing several schools, Mother did not respond. As a result, on February 18, 2011, Father filed a verified petition for modification of custody and parenting time or, in the alternative, to award him primary physical custody so that K.S. could attend school in Fort Wayne. On May 10, 2011, Father filed a verified petition for rule to show cause and contempt citation, alleging that Mother violated the trial court's order and the Indiana Child Support Guidelines by failing, among other things, to pay her portion of K.S.'s healthcare expenses and purchase K.S.'s clothing. On July 27 and August 11, 2011, the trial court conducted hearings on Father's petitions. On August 25, 2011, the trial court issued its order, acknowledging that because of K.S.'s age and because the parties live in different communities, continued joint physical custody was no longer an option. The trial court awarded Mother primary physical custody and reduced Father's parenting time to that prescribed by the Indiana Parenting Time Guidelines.

On September 21, 2011, Father appealed the trial court's order. While the appeal was pending, Mother had primary custody of K.S. in Auburn where she enrolled K.S. in a preschool program. When Mother initially filled out the application for preschool, she

3

neglected to identify Father or to include his contact information. Once Father was known to the school, he became involved by attending school conferences and events. Although the custody order granted Father the minimum parenting time provided by the Guidelines, Father exercised substantially more time due to Mother's work schedule. In fact, Father continued to have K.S. almost half the time.

In March 2012, after an appellate oral argument but before the opinion was issued, Mother married K.C. (Stepfather). On Mother's wedding day, she sent a text to Father stating that he no longer would be afforded the opportunity for additional parenting time. On March 1, 2012, Mother filed notice of her intent to relocate again, this time to Wolcottville, where Stepfather resided. This proposed relocation increased the driving distance from Father's residence in Fort Wayne to approximately one hour. On March 12, 2012, Father filed an objection to the proposed relocation, requesting (1) Mother to be enjoined from relocating K.S. to Wolcottville and (2) a modification of custody if Mother relocated.

On April 18, 2012, the court of appeals issued a memorandum opinion, reversing and remanding the physical custody determination, affirming the legal custody determination, and instructing the trial court on remand to rule on Father's contempt petition. *See In Re the Paternity of K.S.*, 17A03-1109-JP-438 (Ind. Ct. App. Apr. 18, 2013) (Riley, J. dissenting in part). On July 20, 2012, the trial court conducted a hearing on the issues remanded by this court, as well as on Mother's relocation request and Father's opposition thereto.

During the hearing, Mother testified that her reasons for relocating to Wolcottville were primarily economic and acknowledged that if her situation changed, she might relocate again. As a result of her proposed relocation, she wanted K.S. to attend Wolcott Mills Elementary School. Father opposed this school because of its poor academics and instead wanted K.S. to attend Concordia Lutheran, a private school based in Fort Wayne. Father presented evidence that K.S. is already familiar with the school as he attends church and summer camps there.

With respect to the physical custody issue, Father presented evidence supporting his reasons to want primary physical custody. In his testimony, Father focused on the stability he can offer and K.S.'s closeness with his family. Father indicated that he feared that the proposed relocation would not only result in decreased parenting time for him but would also jeopardize his ability to be involved in K.S.'s school and extracurricular activities. Based on the circumstances and proposed hardships and adjustments that would result from Mother's relocation, Father requested primary physical custody of K.S., with Mother receiving parenting time.

On August 16, 2012, the trial court issued its Order, awarding Father primary physical custody of K.S. and ordering Mother to reimburse Father for certain medical expenses. Specifically, the trial court's Order provided, in pertinent part that

> 2. With regard to the factors listed in Indiana Code [section] 31-14-13-2 for consideration in determination of custody:
> (A) Both parents desire primary physical custody, and the child's age, sex, and wishes are not a distinguishing factor.
>
> (B) Mother married [Stepfather] on March 23, 2012, and moved very recently to a house [Stepfather] owns near Wolcottville, Indiana. This is

5

approximately 30 minutes further from Father's house in Fort Wayne than where Mother lived in Auburn. Although Mother and [Stepfather] have been in a relationship since before the last court hearing, the timing of the marriage seems odd. It was so hastily arranged that Mother's father and brother could not attend. At least one reason for the timing of the marriage may have been Mother's misapprehension that her marriage would cause Father to lose his right of first refusal under the Parenting Time Guidelines, [] a contentious point between the parties. Mother admits to having an up and down relationship with [Stepfather].

Father is married [to] [H.S.]. They have lived in the same house in Fort Wayne for over 3 years. Their household includes their daughter [A.S.] who will turn 3 in August with another child due in December 2012.

(C) A major bone of contention between the parties is the school in which K.S. will enroll for kindergarten. The public elementary school where Mother now lives is Wolcott Mills. Father has long planned for K.S. to attend Concordia Lutheran in Fort Wayne, a private Christian based school. Students at Concordia score better on state wide testing, []. Each party believes K.S. is better suited for the school he would attend if they had primary physical custody.

Of significance here to the [c]ourt is the relative importance each party seems to place on education. At the time of the last hearing Mother thought it was crucial for K.S. to attend school in Auburn close to her and her parents. Father's plan for education has remained consistent, and is part of a broader focus of the family which includes religious services and Sunday school teaching.

(D) Both parties are mentally and physically capable to be the primary custodian for K.S.

(E) [Stepfather's] ex wife [S.C.] testified. She and [Stepfather] have a 6 year old son; [Stepfather] has legal custody and the son lives with [Stepfather] and [Mother]. [S.C.] has parenting time. [S.C.] testified that [Stepfather] was physically abusive and used inappropriate forms of discipline on their son. Of concern here is the ongoing dispute, including [Mother], to which K.S. is exposed.

(F) There was evidence at the previous hearing of the extremely close relationship between K.S. and [M.M.], maternal grandfather. At that time, Mother was living next door to her parents, and working nights. Often K.S. spent overnights with his grandparents who may have been considered defacto custodians. K.S. and [maternal grandfather] remain close, but since Mother quit her job and moved to Wolcottville, there is no defacto

custodial relationship anymore between K.S. and his maternal grandparents.

3. With regard to the factors listed in Indiana Code [section] 31-17-2.2-1, Mother testified her reasons for moving to Wolcottville were economic. [Stepfather] had built and owns the home, and apparently financing for the home makes it difficult or impossible to sell at this time. Wolcottville is about one hour away from [Stepfather's] job and Father's residence in Fort Wayne. Being further from Father makes midweek and right of refusal parenting time more difficult and expensive, but the [c]ourt does not believe Mother's move was motivated to frustrate Father's parenting time.

4. Mother resigned from full time employment at the Northeastern Center effective May 16, 2012. She remains available for temporary fill-in assignments with her former employer, but does not plan to work full time in the immediate future. For purposes of computing support, the [c]ourt presumes weekly income of $300.00.

5. Father is employed at Sirva. His employment seems secure. He earns $900.00 weekly, and incurs health insurance premiums attributable to K.S. of $22.11 per week. He has an after born child.

6. It is in the best interest of K.S. that primary physical custody be with Father. Both parties are to retain joint legal custody.

7. Mother shall have parenting time according to the Indiana Parenting Time Guidelines.

8. According to the Child Support Obligation Worksheet attached hereto, Mother shall pay support in the amount of $15.00 per week.

(Appellant's App. pp. 13-15).

Mother now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

When reviewing a custody determination, we afford the trial court considerable

deference as it is the trial court that observes the parties' conduct and demeanor and hears

7

their testimonies. *Kondamuri v Kondamuri*, 852 N.E.2d 939, 945-46 (Ind. Ct. App. 2006). We review custody modifications for an abuse of discretion "with a preference for granting latitude and deference to our trial judges in family law matters." *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011), *trans. denied*. We will not reweigh the evidence or judge the credibility of the witnesses. *Kondamuri*, 852 N.E.2d at 946. Rather, we will reverse the trial court's custody determination based only upon a trial court's abuse of discretion that is clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom. *Id*. It is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).

## II. *Modification of Physical Custody*

The instant cause—an appeal to a trial court's Order following remand—results from a combination of Mother's two requests to relocate, Father's objections to Mother's intended relocations, and the parties' respective requests to modify custody. After the first appeal, we remanded the issue of physical custody because "the trial court failed to consider the factors regarding relocation of a custodial parent;" we affirmed the trial court's conclusion of joint legal custody; and we remanded for a final determination on Father's contempt petition. *See In Re K.S*, slip op. at 2. Mother now asserts that the trial court's Order on remand suffers from the same errors as the initial trial court's determination. In particular, Mother contends that the trial court's findings are

8

insufficient to support its conclusion because the trial court once again failed to acknowledge the interplay between the relocation statute and the modification statute.

Modifications of custody subsequent to a paternity determination are to be made according to Indiana Code section 31-14-13-6, which provides that a child custody order may not be modified unless modification is in the best interests of the child and there is a substantial change of circumstances in one or more of the factors that a court may consider under Indiana Code section 31-14-13-2. These statutory factors are:

(1) The age and sex of the child.
(2) The wishes of the child's parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
  (A) the child's parents;
  (B) the child's siblings; and
  (C) any other person who may significantly affect the child's best interest.
(5) The child's adjustment to home, school, and community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

However, when a non-relocating parent seeks custody in response to the other parent's notice of intent to relocate with the child, the trial court must hold a hearing to review and modify custody "if appropriate." I.C. § 31-17-2.2-1(b). In determining whether to modify a custody order in light of a proposed relocation, the trial court is directed to consider not only the original factors relevant to a custody determination, but also several additional factors set out in § 31-17-2.2-1(b) that are specific to relocation, including:

(1) The distance involved in the proposed change of residence.

9

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

 (A) relocating individual for seeking relocation; and

 (B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

Instead of particularized arguments as to what elements were omitted from the trial court's consideration in its Order after remand, Mother formulates very generalized statements culminating in her conclusion that "[t]he only reference to the specific factors found in the relocation statute was the court's passing reference that the relocation to Wolcottville will separate the parties by 'about one hour.'" (Appellant's Br. p. 14). However, it should be noted that the relocation statutes do not require findings of fact, instead, at a minimum, there must be evidence in the record on each of the factors listed in I.C. § 31-17-2.2-1(b). *Wolljung v. Sidell*, 891 N.E.2d 1109, 1113 (Ind. Ct. App. 2008). Additionally, the trial court does not have to find a substantial change in one of the original modification factors before a custody determination may be ordered after a relocation. *Baxendale v. Raich*, 878 N.E.2d 1252, 1256-57 (Ind. 2008).

The express provisions of the trial court's Order dispel Mother's assertions. On its face, the Order specifically mentions the modification statute and the relocation statute. While the trial court touches upon all factors of the modification statute, it summarizes

some of the relocation factors while the record itself clearly supports the factors not explicitly included by the trial court.

The trial court indicated that the proposed relocation increased the distance between Father's house in Fort Wayne and Wolcottville to one hour. Elaborate testimony at trial clarified the route taken by each party between Fort Wayne and Wolcottville and exhibits support the specific distance travelled. Both parties testified that the proposed change in Mother's residence would result in a hardship on Father and Mother's parenting time as neither party deemed the current parenting time arrangement to be feasible. Father testified that while Mother resided in Auburn, he drove from his house to Auburn several times a week and multiple times a day to transport K.S. to and from school and extracurricular activities. He stated that Mother's relocation to a more distant Wolcottville would adversely affect the feasibility and expense of exercising additional parenting time. The trial court also noted that midweek parenting time and the right of first refusal would become more difficult and expensive.

The record further contains evidence that Mother relocated K.S. to Wolcottville prior to attaining the trial court's approval. When Father attempted to get his parenting time, Mother refused to work with him and, instead, she left her house when Father was driving to Wolcottville and made other plans for K.S. during Father's parenting time. In addition, evidence was presented that by relocating to Wolcottville, K.S. would have to adjust to a new house, a new sibling, a new community, a new school; whereas Father introduced substantial evidence—uncontroverted by Mother—indicating that granting

11

custody to Father would result in more stability and an easier adjustment for K.S. as he already knows the house, the community, and the school.

Based on the evidence before us, we cannot agree with Mother that the trial court's findings are insufficient and that there is a lack of evidence supporting the trial court's award of physical custody to Father.[1]  Under these circumstances, the trial court did not abuse its discretion and we affirm the trial court's Order, concluding that Father should receive physical custody of his minor child.

CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it granted Father physical custody of K.S. upon Mother's request to relocate the minor child.

Affirmed.

BRADFORD, J. and BROWN, J. concur

---

[1] In her brief, Mother asserts that "[i]nterestingly, the trial court maintained the joint legal custody arrangement." (Appellant's Br. p. 12).  We remind Mother that the initial appellate opinion only remanded two issues to the trial court for reconsideration:  the joint physical custody and Father's petition for contempt.  The majority affirmed the trial court's institution of joint legal custody.  *See In Re K.S.*, slip op. p. 16 (Riley, J. dissenting:  "Mother and Father's on-going battles are characterized by persistent patterns of behavior ingrained in the party's own personality . . . Although their attitudes towards decision making might improve temporarily [], it will only be a matter of time before each party reverts true to form and we will be called upon again to negotiate between Mother and Father.  The pitfall of awarding and maintaining a joint legal custody arrangement primarily to placate the parties, as done by the majority's decision, should be avoided as not in the best interests of the child.").