## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2018, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer Irons Jostes
Cedar Lake, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brent S. Potoski,<br>*Appellant-Respondent,*<br><br>v.<br><br>Nicole R. Stotts,<br>*Appellee-Petitioner* | November 15, 2018<br><br>Court of Appeals Case No.<br>18A-JP-1285<br><br>Appeal from the Jasper Circuit Court<br><br>The Honorable John D. Potter, Judge<br><br>Trial Court Cause No.<br>37C01-1609-JP-244 |

**Altice, Judge.**

## Case Summary

[1] Brent Potoski (Father) and Nicole Stotts (Mother) had three children (the Children) together during their fourteen-year relationship. They ended their relationship by August 2016, and Mother moved out with the Children. The

parties quickly filed petitions to establish child support and custody. Father sought shared legal and physical custody. In March 2017, following a short evidentiary hearing, the trial court issued an Order Establishing Paternity, Custody, Support and Visitation (the 2017 Order). Father appealed several aspects of the 2017 Order. In a memorandum decision, we affirmed in part, reversed in part, and remanded with instructions. *In re Paternity of Potoski*, No. 37A03-1704-JP-947 (Ind. Ct. App. November 15, 2017). Most notably, we held that the trial court abused its discretion by awarding primary physical and sole legal custody to Mother without a proper consideration of the relevant statutory factors, including evidence from before the separation.

[2] On remand, the trial court issued a new order in April 2018 (the 2018 Order). The court revised some of its findings and included new ones. With respect to custody, the trial court ordered joint legal custody and awarded primary physical custody to Mother, with Father exercising parenting time pursuant to the Indiana Parenting Time Guidelines (the Guidelines). The trial court set child support at zero dollars per week.

[3] Father appeals from the 2018 Order. He argues that, once again, the trial court erred by awarding sole physical custody to Mother. Father also notes a miscalculation in the child support order. Like the previous appeal, Mother has not filed an appellate brief.

[4] We reverse and remand.

## Facts & Procedural History

[5] Mother and Father's long-term relationship ended around August 2016, when Mother moved out with their three minor children. Their sons K.P. and R.P were born in December 2002 and March 2006, respectively. Their daughter E.P. was born in October 2008. Although Mother and Father were never married, they were together about fourteen years and lived as a family in Jasper County, Indiana. During their relationship, both Mother and Father generally worked outside of the home, and they equally shared parental responsibilities. According to Mother, Father has always been an involved father and has a close bond with the Children.

[6] After Mother and the Children moved out of the family home, Mother allowed Father to have parenting time pursuant to the Guidelines. That is, Father had the Children on Wednesdays and every other weekend. Father, however, desired more time with them. Although he did not provide Mother with money to support the Children during this time, he did pay for some expenses, such as clothing, shoes, phones, and haircuts. Additionally, because Mother took all of the furniture from the Children's bedrooms, Father had to refurnish their bedrooms, which took time. Father was experiencing financial troubles at the time but was working through them.

[7] On September 15, 2016, Mother filed a petition to establish child support. Thereafter, on October 31, 2016, Father filed a petition for orders on custody and parenting time, in which he expressly sought "joint custody and equal parenting time." *Appellant's Appendix Vol. 2* at 16. Mother responded with a

petition to establish paternity, seeking primary physical custody and determination of child support.

[8] On February 23, 2017, the trial court held an evidentiary hearing concerning the various petitions. Mother and Father each provided brief testimony. Father proposed a schedule for sharing equal custody of the Children. Mother, however, testified that she preferred to continue the current parenting schedule because "stability is in the best interest of the children." *Transcript Vol. II* at 37.

[9] The trial court issued the 2017 Order on March 27, 2017, establishing paternity, custody, support, and parenting time. The trial court awarded legal and physical custody to Mother, "subject to [] Father's right of parenting time as agreed by the parties with a minimum pursuant to the [Guidelines], including overnights on Wednesdays." *Appellant's Appendix Vol. 2* at 23. The trial court also ordered Father to pay $31.00 per week in child support, increased by an additional $19.00 per week to satisfy an arrearage.

[10] Father appealed the 2017 Order, and Mother did not file an appellate brief. In a memorandum decision issued on November 15, 2017, we affirmed in part, reversed in part, and remanded. Relevant here, we reversed the custody determination and part of the calculation of child support and remanded for reconsideration and recalculation in light of our decision. We will discuss the prior appeal in more detail below.

[11] On remand, the trial court issued the 2018 Order on April 23, 2018. In addition to recalculating child support, the trial court modified its order regarding

custody. The court ordered shared legal custody of the Children but granted Mother primary physical custody with Father having parenting time, at a minimum, pursuant to the Guidelines. Father appeals from this order. Additional facts will be provided below as needed.

## Discussion & Decision

### Standard of Review

[12] Once again, Mother has not filed an appellate brief. As a result, we will not undertake the burden of developing arguments on Mother's behalf and will reverse if Father establishes prima facie error. *See Duty v. CIT Group/Consumer Fin., Inc.*, 86 N.E.3d 214, 215 (Ind. Ct. App. 2017). Prima facie, in this context, means at first sight, on first appearance, or on the face of it. *Id.* This standard, however, "does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required." *Wharton v. State*, 42 N.E.3d 539, 541 (Ind. Ct. App. 2015).

### Custody

[13] Father argues that the trial court erred by awarding primary physical custody of the Children to Mother. In this regard, he contends that the trial court failed to follow our prior directive to consider the evidence regarding parenting of the Children from birth, rather than focusing on the parenting schedule unilaterally imposed by Mother since separation. Additionally, Father asserts that in the 2018 Order, the trial court ignored or misrepresented certain facts.

[14]     A review of the prior appellate decision is helpful here.  There, we reversed the custody determination in the 2017 order, explaining:

> In this case, rather than considering the required relevant factors, the trial court appears to have crafted its own standard.  The trial court based its decision partly on the fact that, following the parties' separation, Father – at Mother's insistence – only exercised parenting time with the Children in accordance with the Parenting Time Guidelines. The trial court also criticized Father's financial struggles.... The trial court found that, following the parties' separation, Mother had maintained the Children's routines and supported them without any assistance from Father, even though both parties testified that Father cared for the Children whenever permitted to do so by Mother and that he had provided the Children with certain items such as clothing and shoes.

> It is well established that the trial court must consider all relevant factors in deciding the best interests, which specifically includes those identified in Indiana Code section 31-14-13-2.  *See Baxendale v. Raich*, 878 N.E.2d 1252, 1254 (Ind. 2008). Furthermore, when "a trial court is making an initial custody determination, it is required to consider all evidence from the time of [the] child's birth in determining the custody arrangement that would be in the best interest of [the] child." *In re Paternity of M.W.*, 949 N.E.2d 839, 843 (Ind. Ct. App. 2011)]. *Here, the trial court clearly failed to take into account the relationship that both parents have had with the Children throughout their lives.  Both Father and Mother testified that they shared the responsibilities in raising their Children, and both shared a bond with the Children.  Moreover, Father and Mother live only five minutes apart, so the Children's school and bus schedules are not disrupted regardless of which parent is exercising parenting time. The trial court found that Mother has maintained the Children's schedules since the separation, and while stability is certainly relevant in deciding the Children's best interests, it is only one factor for*

*the trial court to consider.* The trial court should have analyzed all listed factors - plus any other relevant considerations - from the time of the Children's birth in making an award of physical custody. By simply relying on the parenting time and support provided by the parties from the time of their separation in July of 2016 until the hearing in February of 2017 as the basis for its support order, we find that the trial court abused its discretion.

*Potoski*, slip op. at 8-9 (emphasis supplied).

[15]    I.C. § 31-14-13-2 provides in relevant part:

The court shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following:

(1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parents;

(B) the child's siblings; and

(C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

****

[16] After noting the statutory factors in its 2018 Order following remand, the trial court stated:

> Father requests joint physical custody with equally shared overnights and parenting time; however, this has not been the practice as Father has been enjoying overnights on Wednesday evenings and not having equal overnights since the parties split in July of 2016. The children are all school aged and a fixed home and a fixed schedule would be in their best interests. Father's proposal to have them switch residences multiple times during the week is not in the best interests of the children. Additionally, as of the hearing date, the parties' daughter had only spent one overnight on a weekday with father usually going home to mother's house. Father testified that the boys have to share a room and do not like to at his house and [R.P.] sleeps with him unless Father's girlfriend stays over and then he sleeps on the couch or at a friend or neighbor's house. It is not in the best interest of [R.P.] to be demoted to couch sleeping or another residence because Father's girlfriend sleeps over. At Mother's house they have their own beds. The children are school aged and have a set routine and schedule that has been successful since the break-up of the parties and it should be continued. Per the evidence at trial, Mother has always been the parent who takes the kids to the doctor and signs them up for school even while the parties were together. Father does assist and take the kids to practice or games when he has them.
>
> The age of children; their interaction and interrelationship with each other and the problem caused by interacting with Father's girlfriend; and each of the children's adjustment to their home, school and community are all factors in Mother's favor and weigh heavily in granting her physical custody.

*Appellant's Appendix Vol. 2* at 11. Based on these findings and conclusions, the trial court granted Mother primary physical custody of the Children, "subject to

Father's right of visitation, at a minimum, pursuant to [the Guidelines] including his Wednesday overnight visitation." *Id.* at 11-12.

[17] Our review of the 2018 Order reveals that the trial court continued to focus almost entirely on the seven-month period between the parties' separation and the evidentiary hearing. This was improper. The record establishes that Mother and Father had raised the Children together since birth. Over those fourteen years, they both worked outside the home and equally participated in caring for the Children. Mother testified that Father was an involved father, active in the Children's lives, and closely bonded with the Children. Further, the trial court's one reference to the period prior to separation was wrong. The court found that Mother had always been the parent who took the Children to the doctor and signed them up for school. On the contrary, Mother testified that she has done these things as the primary caregiver since the separation because she has them the majority of the time now.

[18] After the separation, Father sought to have additional parenting time with the Children, but Mother demanded that they follow the Guidelines. Thus, within three months, Father filed a petition for orders on custody and parenting time, in which he sought "joint custody and equal parenting time." *Id.* at 16. At the hearing, Mother acknowledged that there was no reason Father should not have more parenting time than the minimum set out in the Guidelines. She simply indicated that she did not feel Father's proposed parenting schedule was in the Children's best interests because "they would have more stability" if they would continue on the current schedule. *Transcript Vol. II at 37.*

[19] The trial court observed that the Children are all school aged and concluded that a fixed schedule would be in their best interests. This, however, does not establish why Mother's proposed schedule is better than Father's proposed fixed schedule. The trial court noted that Father's schedule would have the Children switching residences multiple times each week. But in reality, the same number of switches occur under Mother's schedule – the Children just stay shorter periods with Father. Further, the trial court ignored the fact that "Mother and Father live only five minutes apart, so the Children's school and bus schedules are not disrupted regardless of which parent is exercising parenting time." *Potoski*, slip op. at 9.

[20] Interestingly, we observe that the trial court made little mention of Mother's residence, noting only that the Children had their own beds there. This is true because Mother emptied the Children's bedrooms when she moved out with them. Father, at a difficult financial time in his life, then had to refurnish the bedrooms over the next several months. This was the sole reason that E.P. had not yet spent many overnights with Father. With respect to R.P.'s dislike of sharing a room with K.P., the record is silent as to whether they have their own rooms at Mother's home. Father lives in the three-bedroom home that the Children grew up in, so it appears likely that R.P. and K.P. have always shared this room. In any case, we cannot agree with the trial court's statement that R.P. is "demoted to couch sleeping" when Father's girlfriend spends the night. *Appellant's Appendix Vol. 2* at 11. Rather, R.P. has chosen not to sleep in the room he shares with his older brother.

[21] Although the trial court did not expressly apply a presumption in favor of Mother in the 2018 Order, we conclude it effectively did just that by focusing on the short period of separation rather than the years of co-parenting before. As Father has established prima facie error, we reverse the custody order and direct the trial court, on remand, to issue a custody order in which Mother and Father share equal parenting time.

### Child Support

[22] Additionally, Father notes that the trial court erred when recalculating child support after remand.[1] The mistake is evident on the face of the child support worksheet. The total child support obligation (Line 5 of the worksheet) should be $507.48 ($396.00 + $86.04 + $25.66) rather than $477.48. Using the correct sum results in a weekly support obligation by Father of approximately $10 per week. Of course, the child support amount will change with Father's increased parenting time. On remand, the trial court is directed to recalculate child support based on the new division of parenting time.

[23] Reversed and remanded.

Brown, J. and Tavitas, J., concur.

---

[1] The miscalculation was actually in favor of Father.