## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 13 2020, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas G. Bradburn
Bradburn Law Firm
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Nicole D. Barker
Weltman, Weinberg & Reis Co., LPA
Cincinnati, Ohio

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Victoria M. Jones, <br> *Appellant-Defendant,* <br><br> v. <br><br> Shenandoah Funding Trust, <br> *Appellee-Plaintiff.* | October 13, 2020 <br><br> Court of Appeals Case No. <br> 20A-CC-553 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Thomas W. Webber, Sr., Judge Pro Tempore <br><br> Trial Court Cause No. <br> 45D10-1810-CC-3746 |

**Bailey, Judge.**

# Case Summary

Victoria Jones ("Jones"), the co-signer on Ian Gill's ("Gill") student loan, appeals the denial of her motion to correct error, which challenges the trial court judgment in favor of Shenandoah Funding Trust ("SFT") for the amount of the loan, plus costs and interest. Jones raises several issues which we consolidate and restate as the following dispositive issue: whether there was sufficient evidence that SFT owned the debt, so as to support the judgment.

We reverse.

# Facts and Procedural History

In the fall of 2007, Gill completed a Signature Student Loan application and promissory note ("Gill/Jones Loan") with Sallie Mae Education Trust. Jones was a co-signer on the Loan. Thereafter, the Gill/Jones Loan was purportedly transferred multiple times as part of a large bundle of similar loans.

On October 16, 2018, SLM Private Education Loan Trust 2012-E ("SLM PELT 2012-E") filed a collection lawsuit against Jones and Gill, alleging that SLM PELT 2012-E was the owner of the Gill/Jones Loan and was owed $12,891.11 plus interest. Jones and Gill filed an answer and affirmative defenses, which included SLM PELT 2012-E's alleged lack of standing. On January 7, 2019, SLM PELT 2012-E filed a motion for summary judgment which was accompanied by an Affidavit of Debt and designated supporting documentation. Gill and Jones filed their response in opposition and, on May

2, 2019, the trial court held a hearing on the summary judgment motion. Following the hearing, the trial court denied the motion.

[5] On July 25, 2019, SLM PELT 2012-E filed a motion to substitute SFT as the plaintiff, and the trial court granted that motion. On October 1, 2019, the trial court held a bench trial at which SFT's sole witness was Mary Kay Mauer ("Mauer"), a litigation supervisor employed by Navient Solutions, LLC. Through Mauer, SFT introduced its Exhibit A, the original loan application between Sallie Mae Education Trust and Gill and Jones, and it was admitted over Jones's foundation and hearsay objections.[1] SFT also introduced Exhibit B, a Bill of Sale ("BOS") dated January 23, 2006, between Sallie Mae Education Trust and SLM Education Credit Finance Corporation ("SLM ECFC"). Exhibit B—which was admitted without objection—included an "attached schedule" consisting of a printout of a computer report purporting to list the transferred loans included in the January 23, 2006 BOS. Ex. at 10, 13. All purported loan references on the schedule are blacked out except the last loan, which states Gill's name, the last four digits of his Social Security Number, and the principal and interest due on his loan. *Id.*

---

[1] Thus, Jones is mistaken when she maintains on appeal that Exhibit A was never admitted into evidence.

[6] The following exhibits were also introduced through Mauer and admitted over Jones's foundation, hearsay, and/or failure-to-prove-ownership-of-the-loan objections[2]:

Exhibit C     January 20, 2009, BOS from SLM ECFC to Rendezvous Funding LLC

Exhibit D     April 24, 2009, BOS from Rendezvous Funding I[3] to Rendezvous Funding LLC

Transferred "in turn" from Rendezvous Funding LLC to Churchill Funding LLC

Transferred "in turn" from Churchill Funding LLC to VL Funding LLC

Exhibit E     July 14, 2009, BOS from VL Funding LLC to SLM Funding LLC

Exhibit F     July 14, 2009, BOS from SLM Funding LLC to SLM Private Education Loan Trust 2009-C ("SLM PELT 2009-C")

---

[2] Jones stated that she objected to "all of these transfer documents" in SFT's exhibits on the same grounds but later stated that she had no objection to the admission of Exhibit G. Tr. at 40.

[3] Mauer testified that she was "not sure exactly why" the first transferor in Exhibit D is "Rendezvous Funding I" instead of "Rendezvous Funding LLC," when Exhibit C showed the latter to be the owner of the Gill/Jones Loan at the time of the April 24, 2009 transfer. Tr. at 27.

Exhibit G    October 18, 2012, BOS from SLM PELT 2009-C to SLM Education Credit Funding LLS ("SLM ECF LLC")

Exhibit H    October 18, 2012, BOS from SLM ECF LLC to SLM Private Education Loan Trust 2012-E ("SLM PELT 2012-E")

Exhibit I    November 14, 2018, BOS from SLM PELT 2012-E to Navient Solutions, LLC (f/k/a Sallie Mae, Inc.) and Navient Credit Funding LLC (f/k/a SLM ECF LLC) or Navient Credit Finance Corporation[4]

November 14, 2018, "Additional Purchase Agreement" from Navient Credit Finance Corporation to Shenandoah Funding LLC

November 14, 2018, "Additional Purchase Agreement" from Shenandoah Funding LLC to Shenandoah Funding Trust (SFT)

*Id*. at 14-56.

[7]    None of the documents in Exhibits C through I identify any individual loans, including the Gill/Jones Loan. Rather, those exhibits attach only documents that identify the aggregate purchase price for bundles of loans. For example, Exhibit C attaches a document entitled "Loan Transmittal Summary Form"

_____

[4] Exhibit I lists "Navient Credit Funding, LLC" as the "depositor" on the first page but is signed on the second page by "Purchaser" "Navient Credit Finance Corporation." Ex. at 34-35.

which only lists the "Aggregate Purchase Price of all Purchased Loans" as being over two million dollars and "Additional Loans" as being over one million dollars. *Id*. at 16. Mauer identified all of the transferors and transferees in the BOS exhibits as subsidiaries of Navient Solutions LLC, "formerly known as Sallie Mae, Inc." *Id*. at 34. Mauer testified that the transfers were done in order to "open up funds in the prior entity to purchase more student loans … [b]ecause there's only a certain amount of money that is available in each [entity]." Tr. at 15.

[8] When questioned by the court as to how she was able to track the Gill/Jones Loan "all the way through these various entities as it traveled to the current holder," Mauer responded as follows:

> By looking at the system of record, yes. We have one particular page that lists all of the sale codes and information. And that's - - I work on those daily, pulling this information. So, yes, I would - - under oath, I would say these - - this particular loan is included in each of these sales, yes.

*Id*. at 38. Mauer also testified, in response to the court's further questioning, that not all unpaid accounts end up in the same "specific holding." *Id*.

[9] SFT also introduced Exhibit J, which is a payment history of the Gill/Jones Loan, and it was admitted over Jones's objection. The document in Exhibit J does not identify who owned the Gill/Jones Loan.

[10] In an order dated October 7, 2019, the trial court entered judgment in favor of SFT. The order did not include findings of fact and conclusions of law. Jones

subsequently filed a motion to correct error which was denied. This appeal ensued.

# Discussion and Decision

The trial court's order did not contain any findings of fact or conclusions thereon. Therefore, we review the order "as a general judgment and, without reweighing evidence or considering witness credibility, affirm if sustainable upon any theory consistent with the evidence." *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008) (quotation and citation omitted).

To prove its case, SFT was required to show that (1) Gill—and Jones as co-signer—executed a contract for the student loan with Sallie Mae Education Trust, (2) SFT was the assignee and now owner of that debt, and (3) Gill and Jones owed the original owner, Sallie Mae Education Trust, the amount alleged. *See Holmes v. Nat. Collegiate Student Loan Tr.*, 94 N.E.3d 722, 724 (Ind. Ct. App. 2018) (citing *Seth v. Midland Funding, LLC*, 997 N.E.2d 1139, 1140 (Ind. Ct. App. 2013)). Even if we assume, without deciding, that SFT met its burden to prove (1) and (3), above, it is clear that it failed to prove (2), i.e., that it is the owner of the Gill/Jones Loan.

SFT's exhibits C through I purported to show assignments of the Gill/Jones Loan between various subsidiaries of Navient Solutions, LLC, and, ultimately, to SFT. However, none of those exhibits specifically identified the Gill/Jones Loan as included in the transfers. Each BOS in those exhibits states that it is

assigning loans identified in either an attached "Annex," *e.g.*, Ex. C, Ex. at 14, or "Schedule," Ex. D, Ex. at 17. But none of the exhibits include attachments that are titled "Annex" or "Schedule." And, while Exhibits C through I do contain attachments, each such attachment fails to identify any individual loans involved in the transaction but refers only to large groups of loans consisting of thousands of individual loans. *See, e.g.*, Ex. at 19 (Ex. D.) (including attachment entitled "Summary of Loans" that provided only the amount due on "463,434" loans). *See Williams v. Unified CCR, LLC*, 70 N.E.3d 375, 380 (Ind. Ct. App. 2017) (holding debt assignments between debt collector entities that referred to "Receivables" but did not specifically mention defendant's credit card account failed to establish that plaintiff debt collector had been assigned or owned the credit card account).

[14]     Nor do the exhibits demonstrate that each transferred bundle of loans is the same bundle that included the Gill/Jones Loan in Exhibit B; in fact, Mauer testified that all overdue accounts do not end up in the same "holding," Tr. at 39, or bundle.[5] *Cf. Smith v. Nat. Collegiate Student Loan Tr.*, No. 19A-CC-3041, 2020 WL 3445834, at *5 (Ind. Ct. App. June 24, 2020) (plaintiff proved

---

[5] At trial, the following exchange took place:

| COURT: | The accounts who [sic] are in jeopardy, by reason of non-paying, do they end up all in one account? |
| MAUER: | No. You mean to – under a specific holding? |
| COURT: | Yes. |
| MAUER: | No. |

Tr. at 39.

ownership of debt where it produced documentation that original lender transferred a bundle of educational loans in a *specified loan program* that included borrower's loan to another entity, which then sold the bundle in the *same specified loan program* to the plaintiff).

[15] Mauer testified that each BOS in exhibits B through I included the Gill/Jones Loan within it. She based that testimony entirely upon a recording that she did not create and that was not in evidence. Mauer stated that she was able to track the Gill/Jones Loan all the way through the "various entities as it traveled to the current holder," SFT, by having reviewed Navient's "system of record data base" which includes "one particular page that lists all of the sale codes and information." Tr. at 38, 53. When asked why Exhibits C through I did not include attachments like the one in Exhibit B that listed the Gill/Jones Loan specifically, Mauer testified:

> because as it—as the—and not necessarily this loan—as a batch of student loans moves through different funds, they just don't— they don't attach a transmittal page or they don't attach the—it's listed on the borrower's account on the system. But I—I don't know that there's a manifest or a transmittal that goes with these—with this particular loan. I haven't been—I haven't found one. But it's listed on the system of record on the borrower's account.

*Id*. Thus, the only record that allegedly proved that the Gill/Jones Loan was included in each bundle of loans in Exhibits C through I was a specific page in Navient Solutions, LLC's "system of record" data base that Mauer had reviewed prior to the date of the trial but which was not produced at trial. *Id*. at

47-48. However, Mauer testified that she did not personally input the relevant information into that system, and she did not know who did. *Id*. at 55-56.

[16] Indiana Rule of Evidence 1002, also known as the best evidence rule, states in relevant part, that "[a]n original writing, *recording*, or photograph is required in order to prove its content unless these rules or a statute provides otherwise." (Emphasis added). The purpose of this rule is "to assure that the trier of the facts has submitted to it the evidence upon any issue that will best enable it to arrive at the truth." *Caesar v. State*, 139 N.E.3d 289, 291-92 (Ind. Ct. App. 2020) (quotation and citation omitted), *trans. denied*. The best evidence rule "is generally applied with respect to documentary evidence, such as written instruments, and it excludes all testimony of the contents of such instruments when the instrument itself is available and could be examined by the [fact finder]." *Crosson v. State*, 376 N.E.2d 1136, 1141 (Ind. 1978) (quotation and citation omitted); *see also Hilligoss v. State*, 255 N.E.2d 101, 103 (Ind. 1970) (noting the best evidence rule applies only in those situations where parties seek to prove a writing for the purpose of establishing its terms).

[17] Here, Mauer testified about a particular page on the Navient computer "system of record" for the purpose of proving the alleged terms of that page of the recording; i.e., terms that allegedly showed that the Gill/Jones Loan was transferred between the entities identified in Exhibits C through I. Mauer testified that she did not scan the information regarding the transfers into that system, nor did she know who was responsible for inputting that information. She testified that she simply reviewed the information. In addition, there was

no testimony or other evidence establishing that a printout from the computer recording was unavailable or could not be examined by the defendants or the court. Yet Mauer's testimony regarding the current owner of the specific Gill/Jones Loan was based solely upon her review of the terms of that recording that she did not create and that was not produced at trial.[6] Mauer's testimony was not the best evidence of the alleged recording. Ind. R. Evid. 1002.

# Conclusion

[18] SFT has failed to show that it owns the Gill/Jones Loan; if anything,[7] it has only proven that it owns a bundle of 9,338 unspecified loans referenced in the November 14, 2018, BOS from Shenandoah Funding, LLC, to SFT. Ex. at 53-56. Because the documents regarding the assignments of debt failed to provide any information regarding the Gill/Jones Loan in particular, that evidence was insufficient to prove that SFT owned that loan. And Mauer's testimony that

---

[6] We further note that SFT did not ask that Mauer be qualified as an expert whose opinion about the records might be admissible under Indiana Rule of Evidence 703, which provides that "[e]xperts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field."

[7] Jones raises the additional issue of whether SFT proved any loans were transferred from Sallie Mae Education Trust to, ultimately, SFT. Jones notes that there is an apparent break in the "chain" of assignments between Exhibit C and Exhibit D. We also note there appears to be other unexplained problems with the assignment documents, such as the discrepancy in Exhibit I relating to who purchased the loans, Navient Credit Funding, LLC or Navient Credit Finance Corp. However, we do not address those issues because, even if the assignment documents in Exhibits C through I were unambiguous and proper, there was nevertheless insufficient evidence that SFT owned the Gill/Jones Loan. For the same reason, we do not address Jones's challenges to Exhibits C through I on foundation and hearsay grounds.

she reviewed a page of Navient Solutions, LLC's computer system that showed SFT owned the Gill/Jones Loan was not the best evidence of the same and was, therefore, also insufficient. Given the lack of evidence that SFT owned the Gill/Jones Loan, the trial court judgment for SFT is not sustainable upon any theory consistent with the evidence.

[19] Reversed.

Vaidik, J., and Weissmann, J., concur.